WIDEWATERS ROSELAND CENTER COMPANY, Plaintiff,

v.

The TJX COMPANIES, INC., Defendant.

No. 91–CV–1068.

United States District Court,
N.D. New York.

Dec. 20, 1991.

Marco Marzocchi, Dewitt, N.Y. (Douglas H. Young, of counsel), for plaintiff.

Melvin & Melvin, Syracuse, N.Y. (James Barr Haines, of counsel), Ropes & Gray, Boston, Mass., for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### I.

### INTRODUCTION

Plaintiff, Widewaters Roseland Center Co. ("Widewaters"), commenced this action against The TJX Companies, Inc. ("TJX") in New York State Supreme Court, Onondaga County in August 1991. Widewaters seeks money damages against TJX due to an alleged breach of a lease guaranteed by TJX. *See* Plaintiff's Complaint at ¶¶ 7, 11, 12. TJX removed this case to this court pursuant to 28 U.S.C. section 1452(a) and Fed.R.Bank.Proc. 9027 in September 1991.[1]

---

1. Section 1452 states in pertinent part:
   (a) A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section

Based on its contention that this case is "related to" bankruptcy, TJX now moves for referral of this action to the Bankruptcy Court for the Northern District of New York and for an extension of its time to respond to the complaint.

## II.

## BACKGROUND

The facts which underlie this action are not seriously in dispute. Plaintiff contends that it, as landlord, entered into a 20 year lease with Gaylords National Corporation ("Gaylords"), as tenant, covering certain real estate in Canandaigua, New York. *See* Plaintiff's Complaint at ¶¶ 4, 5. TJX guaranteed the payment of rent, as well as the performance and observance of all agreements and conditions required of Gaylords under this lease. *See* Plaintiff's Complaint at ¶ 7. Plaintiff contends that Gaylords defaulted on the lease. *See* Plaintiff's Complaint at ¶ 10. As a result, Widewaters seeks to collect the rent owing under the lease from TJX pursuant to TJX's guaranty. *See* Plaintiff's Complaint at ¶ 12.

In September 1988, Ames Department Stores, Inc. ("Ames") purchased substantially all of the assets and business of the Zayre Stores Division of TJX. *See* Meltzer Affidavit at ¶ 5. Pursuant to the Acquisition Agreement involved in this sale, Ames agreed ... to assume all liabilities, obligations, costs, and expenses—whenever arising—from the ownership, possession, use or operation of the assets or the business of the Zayre Stores Division." *See* Meltzer Affidavit at ¶ 5 (citing Acquisition Agreement at 5–8). Moreover, "Ames agreed to indemnify TJX against, and to hold TJX harmless from, any loss, liability, claim, damage, or expense suffered or incurred by TJX to the extent arising from any of the liabilities and obligations assumed by Ames." *See* Meltzer Affidavit at

¶ 5 (citing Acquisition Agreement at 42–43). Gaylords was part of the Zayre Stores Division and thus, according to TJX, constituted an asset subject to the acquisition agreement. *See* Meltzer Affidavit at ¶ 6. Therefore, pursuant to the terms of this agreement, TJX contends that Ames agreed to assume and to indemnify TJX in respect of any liability arising out of, or incurred by reason of, this lease. *See* Meltzer Affidavit at ¶ 8.

On April 25, 1990, Ames commenced voluntary proceedings under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, Case No. 90-B-11233. *See* Meltzer Affidavit at ¶ 7. TJX contends that Widewaters' commencement of this action violates the automatic stay which resulted from Ames filing its petition in bankruptcy. Accordingly, TJX has filed a notice of bankruptcy and a notice of automatic stay as well as this motion for referral of this civil action to the Bankruptcy Court for the Northern District of New York and for an extension of its time to respond to the complaint. *See* Defendant's Memorandum of Law at 1.

## III.

## DISCUSSION

TJX contends that this court should refer this case to the Bankruptcy Court for the Northern District of New York pursuant to 28 U.S.C. section 157(a). This statute reads in pertinent part: "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or *related to* a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C.A. § 157(a) (West 1991 Supp.) (emphasis added). Pursuant to this authority, this court adopted an order dated July 20, 1984, that provides as follows:

1334 [Bankruptcy cases and proceedings] of this title.
28 U.S.C.A. § 1452(a) (West 1991 Supp.).
Fed.R.Bankr. 9027 states in pertinent part:
(1) *Where filed; form and content.* An application for removal shall be filed with the

clerk for the district and division within which is located the state or federal court where the civil action is pending....
Fed.R.Bankr. 9027 (Lawyer's Ed. June 1991 Supp.).

[a]ll cases under Title 11, U.S.C. and all proceedings arising under Title 11, U.S.C. or arising in or *related to* a case under Title 11, U.S.C. pending on June 27, 1984 or filed on or after June 28, 1984 are *referred to* the *bankruptcy judges for this district,* to be assigned in accordance with their assignment rules.

*See* Defendant's Memorandum of Law, Exhibit A (emphasis added).

Before this court can refer this matter to the Bankruptcy Court, it must determine, as a threshold matter, whether this case falls within its bankruptcy jurisdiction. Title 28 section 1334(b) governs this court's bankruptcy jurisdiction. This statute provides that "[t]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(b) (West 1991 Supp.) (emphasis added). Both parties assert, and this court agrees, that this court's determination of this motion turns on whether or not this case is "related to" the Ames bankruptcy proceeding.

TJX asserts that this case is related to the Ames bankruptcy proceeding which is pending in the Bankruptcy Court for the Southern District of New York. As support for this position, TJX relies primarily on the Third Circuit's interpretation of the "related to" language of 28 U.S.C. section 1334(b). The leading case in this regard is the Third Circuit's decision in *Pacor Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). In *Pacor,* the Third Circuit stated that the test for determining whether a civil proceeding was related to bankruptcy was

[w]hether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* (citations omitted) ... Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the

debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 994 (emphasis in the original).

Numerous other circuits have endorsed *Pacor's* "related to" test including the Fourth, Fifth, Eighth, and Ninth Circuits.[2] On the other hand, as Widewaters correctly points out, the Second Circuit has adopted a narrower test; and this court is bound by this narrower interpretation.

The Second Circuit adopted its "related to" test in *Turner v. Ermiger,* 724 F.2d 338 (2d Cir.1983). In *Turner,* plaintiff had filed a voluntary petition in bankruptcy in which she claimed as exempt property a "[c]ontingent cause of action against landlord for conversion of restaurant equipment." *Id.* at 339. Two months after she had exempted this cause of action, plaintiff filed an action against defendant in the bankruptcy court. The bankruptcy judge rendered a decision in favor of plaintiff and defendant appealed to this court. In finding that the district court had jurisdiction over the action, this court interpreted "related proceeding" as used in the Northern District's Emergency Resolution to include "civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court."[3] *Id.* at 340 (quoting *In re Turner,* 29 B.R. 419, 421 (N.D.N.Y.1983)).

In reversing the district court, the Second Circuit stated that while it had no difficulty with the Emergency Resolution, it believed that the district judge had given the Resolution an overly literal application. *Id.* at 340. In contrast, the Second Circuit held that because there was "no showing that Turner's action against Ermiger had any 'significant connection' with her bankruptcy case ... it [fell] outside the scope of § 1471(b), which allow[ed] the district courts to conduct civil proceedings 'related to' cases under Title 11." *Turner,* 724

---

2. *See,* for example, *In re American Hardwoods, Inc.,* 885 F.2d 621, 623 (9th Cir.1989); *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987); *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); *A.H. Robins Co. v. Piccinin,* 788 F.2d

994, 1002 n. 11 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

3. This Emergency Resolution is the same as the Order dated July 20, 1984, quoted above.

F.2d at 341; *see also In re Lencoke Trucking, Inc.*, 99 B.R. 200 (W.D.N.Y.1989) (citing *Turner*, 724 F.2d at 341) ("[a] case is 'related' to a Title 11 case if there is a 'significant connection' or nexus between the case at issue and the bankruptcy proceeding"); *In re Holland Indus., Inc.*, 103 B.R. 461 (Bankr., S.D.N.Y.1989) (citing *Turner*, 724 F.2d at 341) ("*Turner* requires the litigation to have a 'significant connection with bankruptcy.'").[4]

■ Widewaters contends that TJX has failed to establish a significant connection between this civil action and the Ames bankruptcy proceeding as required by *Turner*. Plaintiff advances two theories in support of this position. First, it argues that "Widewaters' $16,633.71 claim is much too insignificant in relation to the bankruptcy estate to make any impact whatsoever, let alone a material impact, on the estate." *See* Plaintiff's Memorandum of Law at 4. Secondly, plaintiff contends that this action has no significant connection to the Ames bankruptcy proceeding because

> the outcome of this litigation will neither add to nor reduce the assets of the estate. Widewaters has filed a Notice of Claim with the Bankruptcy Court for the Southern District of New York against Ames' bankruptcy estate in the amount of $16,633.71. Should Widewaters be permitted to proceed against TJX, a judgment against TJX would result in a withdrawal by Widewaters of the aforementioned Notice of Claim which would undoubtedly be replaced by a claim from TJX for the same amount by virtue of the indemnity agreement. In the event Widewaters' litigation against TJX does not succeed, its Notice of Claim will remain in place. The net result is that Ames' bankruptcy estate will be unaffected regardless of the outcome of the litigation.

*See* Plaintiff's Memorandum of Law at 4.

With regard to plaintiff's first theory, Widewaters cites no case law, and this court could find none, that defines "significant connection" by comparing the amount of the claim in the civil action to the total amount of assets in the bankrupt's estate. Rather, the cases appear to turn on the relationship between the subject matter of the two suits. For example, the court in *Turner* found no "significant connection" where the civil action involved an attempt to recover on a cause of action which plaintiff had previously exempted from her bankrupt estate. Likewise, the court in *In re Holland Indus., Inc.* found no "significant connection" where the civil action sought to vacate liens filed by the IRS against property owned by non-debtors. The facts in *Turner* and *In re Holland Indus., Inc.* are so dissimilar to the ones present here that the court concludes that these cases are not dispositive of the issues before this court.

■ Likewise, this court finds plaintiff's second argument in support of its position to be totally without merit. In *In re Holland Indus., Inc.*, the Bankruptcy Court reviewed the types of cases which would and would not be related to bankruptcy in light of *Turner*'s "significant connection" test. In this regard, the court stated that "[i]t is this concern for limits defined by bankruptcy purposes that defines related jurisdiction, under 28 U.S.C. §§ 157, 1334(a), to exclude proceedings between third parties that do not bind a debtor, do not involve estate property and do not concern the debtor-creditor or inter-creditor relationships." *Id.* at 470. By implication, therefore, it is logical to conclude that those actions involving third parties that bind a debtor, involve estate property, or concern the debtor-creditor or inter-creditor relationships are "related to" bankruptcy proceedings.

In this case, Widewaters' statement that its success in this action would result in its

---

**4.** It is interesting to note that nowhere in *Turner* did the Second Circuit specifically hold that "related to" meant "significant connection with." Nor did the court discuss what would or would not constitute a significant connection. In effect, it would appear that *Turner* constitutes a very narrow holding with little, if any, precedential value. Nevertheless, the district courts in this circuit have interpreted *Turner* to require that a civil action be significantly connected with a bankruptcy proceeding in order to be considered related to that proceeding.

removing its Notice of Claim against Ames' bankrupt estate, is in effect an admission that the amount in question affects the property of the debtor, Ames. In addition, the relationship between Widewaters and TJX, both of whom may have claims against Ames' bankrupt estate, would undoubtedly be affected by the outcome of this litigation. Whether the bankrupt estate ultimately pays Widewaters or TJX the $16,633.71 is irrelevant. The fact remains that whomever it pays, the monies will come out of the bankrupt estate. This is exactly the type of situation the court in *In re Holland Indus., Inc.* had in mind when it defined "related to" jurisdiction; and there is no doubt that such an action constitutes a "significant connection" with the bankruptcy proceeding.

Moreover, plaintiff completely ignores the court's holding in *In re Brentano's Inc.*, 27 B.R. 90 (Bankr.S.D.N.Y.1983). In *Brentano*'s the Bankruptcy Court was faced with a situation almost identical to the present one. Brentano was a chapter 11 debtor and tenant, Pine Realty was a landlord, and MacMillan was a guarantor for Brentano's obligations under a lease. Pine Realty commenced a state court suit against MacMillan based on its guaranty. MacMillan moved to stay Pine Realty from proceeding in any court other than the bankruptcy court against MacMillan in connection with the lease entered into by Brentano. *Id* at 90. In holding that it had subject matter jurisdiction over this suit, the court stated that "the bankruptcy court has jurisdiction over a non-debtor third party guarantor of a debt." *Id.* at 91 (citing *In re Lucasa Int'l, Ltd.*, 6 B.R. 717 (Bankr. S.D.N.Y.1980)). The court then went on to hold that the state court action was clearly "related to" Brentano's reorganization case because "[u]nderlying the entire matter is

Brentano's lease. If Pine Realty prevails against MacMillan, MacMillan can recover from Brentano's under its indemnification agreement. The disposition of this claim ... will ultimately determine the fact of this reorganization effort." *Id.* at 92.[5] Plaintiff has made no attempt to distinguish *Brentano's* from its own situation, and the court finds this decision compelling given the similarity of the issues.

Furthermore, in a very recent case in the Eastern District of New York, Judge Weinstein was presented with precisely the same situation as that which is before this court today. *See* Transcript of Hearing on Motion in *Bond Street Assoc. v. The TJX Cos.*, CV–91–1290 (S.D.N.Y. November 15, 1991). There, Bond Street Associates, as landlord, sued TJX, as tenant, in New York state court for rent allegedly owing under a lease Ames had acquired from TJX pursuant to the same acquisition agreement at issue here. TJX removed the case to the Eastern District of New York and then moved to have the case referred to the Bankruptcy Court for the Eastern District. Judge Weinstein appeared to have no trouble finding that the District Court had "related to" jurisdiction. In fact, he seemed to assume the existence of this relationship and moved quickly to a discussion of whether he should refer the case to the Bankruptcy Court for the Eastern District of New York or transfer the case to the Southern District of New York pursuant to 28 U.S.C. section 1404 for "further transfer to the bankruptcy court in connection with the Ames related bankruptcies." *See* Transcript of Hearing on Motion in *Bond Street Assoc. v. The TJX Cos.*, CV–91–1290, at 21; *see also Commonwealth Life Ins. Co. v. Oakes*, 91–CV–1782 (N.D.Ohio, December 9, 1991).[6] After hearing oral argument

---

**5.** Although *Brentano's* was decided before *Turner*, it has not been overruled. Nor did the Second Circuit make any mention of *Brentano's* in reaching its decision in *Turner*. Therefore, *Brentano's* is still good law; and although not binding on this court, its reasoning is very persuasive.

**6.** Although 28 U.S.C. section 1404 permits a district court to transfer a case to a different venue, transfer must be to a district "where it [the

civil action] might have been brought." 28 U.S.C.A. § 1404(a) (West 1976). In this case, pursuant to 28 U.S.C. section 1409(a), "[a] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C.A. § 1409(a) (West 1991 Supp.). Moreover, pursuant to 28 U.S.C. section 1412 "[a] district court may transfer a case or proceeding under title 11 to a district court for

Judge Weinstein transferred the case to the Southern District of New York pursuant to 28 U.S.C. § 1404.

Finally, although not binding on this court, the court finds persuasive the decisions of other courts which have been faced with similar motions by TJX involving other leases which Ames assumed as part of the same acquisition agreement at issue here. These courts have unanimously referred these actions to the bankruptcy courts in their districts. *See Krafchick v. Zayre of East Providence, Inc.,* 91–11866–N, 1991 WL 325535 (D.Mass. September 18, 1991); *Dollar Bank, Federal Sav. Bank,* 90–1278, 1991 WL 328464 (W.D.Penn. Aug. 30, 1991); *Johnston the Florist, Inc. v. Zayre Corp.,* 90–495 (W.D.Penn. July 29, 1991); *Kossman v. The TJX Cos.,* 136 B.R. 640 (W.D.Penn.1991); *Douglas Corp. v. The TJX Cos.,* 90–C–4492 (N.D.Ill. Dec. 14, 1990).

## IV.

### CONCLUSION

For the foregoing reasons, the court concludes that this action is "significantly connected" to the Ames bankruptcy proceeding currently pending in the Bankruptcy Court for the Southern District of New York. Accordingly, in the interest of justice the court transfers this case to the District Court for the Southern District of New York pursuant to 28 U.S.C. sections 1404 and 1412 for further referral to the Bankruptcy Court for the Southern District of New York pursuant to 28 U.S.C. section 157(a) and that district court's standing order promulgated thereunder. Having transferred this case to the District Court for the Southern District of New York, the court need not address defendant's additional request for an extension of time to respond to the complaint. This issue is more appropriately left either to that court or to the bankruptcy judge to decide.

IT IS SO ORDERED.

another district in the interest of justice ..." 28 U.S.C.A. § 1412 (West 1991 Supp.). Accordingly, transfer of this case to the District Court for

the Southern District of New York would be proper because the suit could have been commenced in that forum.