**In re AMES DEPARTMENT STORES, INC., Eastern Retailers Service Corporation, et al., Debtors.**

**Reorganization Nos. 90 B 11233 (JAG)–90 B 11285 (JAG).**

United States Bankruptcy Court, S.D. New York.

Feb. 5, 1992.

David W. Trench, Rubin, Baum, Levin, Constant, Friedman & Bilzin, Miami, Fla., for movant, Hayday, Inc.

Michael Cook and Edward J. Meehan, Skadden, Arps, Slate, Meagher & Flom, New York City, for debtors.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

Hayday, Inc. ("Hayday" or "Landlord") seeks damages from Zayre Florida Corp., an affiliate of Ames Department Stores, Inc. (the "Debtor") for its alleged breach of a lease (the "Lease") between Hayday, as landlord, and Debtor, as tenant. On January 10, 1991, Judge Buschman approved a stipulation authorizing the assumption and assignment of the Lease to K–Mart Corporation ("K–Mart"). The order reserved the issue of Hayday's entitlement to percent-age rent, the issue now before this Court. Because of Debtor's breaches, Hayday maintains it is entitled to percentage rent for the period the subject property of the Lease, an Ames Department Store (the "Miami Store") remained closed, up until the assumption and assignment of the Lease.

The salient facts are not in dispute. On April 25, 1990, Ames Department Stores, Inc., its subsidiaries and affiliates, filed petitions under Chapter 11 of the Bankruptcy Code. In June, 1990, Judge Buschman authorized Debtor to conduct going out-of-business ("GOB") sales at a number of locations, including the Miami Store. The Miami Store closed upon the conclusion of the GOB sale in August, 1990. The location remained dormant through January, 1991, when the Lease was assigned to K–Mart.

Hayday urges this Court to find Debtor owes percentage rents as a result of three separate breaches of the Lease, or combinations thereof. First, Hayday claims that conducting the GOB sale itself amounts to a breach, notwithstanding that it was held with bankruptcy court approval. Second, Hayday argues that Debtor breached the requirement to maximize profits under the Lease by closing the Miami Store at the conclusion of the GOB sale. Third, Hayday submits that in addition to breaching the maximization of profits clause, closing the Miami Store was a breach of Debtor's duty to 'conduct continuously in the leased premises'.

In addition, Hayday proposes that the appropriate remedy for all three breaches is the percentage rent which would have been generated had Debtor continued to operate. Percentage rent payable under the Lease is one and one-half percent of the gross sales exceeding ten million ($10,000,-000.00) dollars for the fiscal year. Hayday argues that the way to calculate the percentage rent due is to compute the average annual gross sales in recent years. Averaging gross sales figures for the years ended 1987–1990, Hayday claims it is entitled to damages of $147,267.00.

■ Hayday claims Bankruptcy Code Section 365 supports its position that Debtor breached the Lease by conducting a GOB sale at the Miami Store and requires enforcement of the GOB provision. It is true that § 365(b)(1) requires Debtor to cure all defaults in order to assume an unexpired lease of nonresidential property, however, the operative Code Section is § 363, not § 365. Section 363(b) authorizes Debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code § 363(b)(1). Conducting a GOB sale is, therefore, governed by § 363.

One of the policies fundamental to the bankruptcy process is that of the Trustee to marshall and maximize estate assets. Section 363(b) fosters that policy by allowing the sale of all, or substantially all, of the debtor's assets outside the context of a plan of reorganization. Debtor obtained court approval to conduct a GOB sale as a means of maximizing its assets while winding down its operations at the Miami Store. This Court believes that to enforce the anti-GOB sale clause of the Lease would contravene overriding federal policy requiring Debtor to maximize estate assets by imposing additional constraints never envisioned by Congress. That is not to say the Code abrogates all lease provisions and statutes conditioning GOB sales. Section 363(e) reserves for bankruptcy courts the discretion to condition the time, place and manner of GOB sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations.

■ Hayday also adopts the curious position that because Debtor neglected to replenish the inventory sold during the GOB sale, Debtor breached its duty under the Lease to maximize profits. Hayday argues that, had Debtor adequately restocked the Miami Store, rather than closing its doors, Debtor would have achieved a higher gross sales figure and Hayday would have re-ceived its percentage rent. Hayday's theory is speculative at best inasmuch as it is far from clear whether Debtor would have turned a profit had it restocked the Miami Store and remained open for business. Moreover, there is no indication that Debtor's decision to conduct a GOB sale was in any way inconsistent with its covenant under the Lease to maximize profits. It is entirely possible that absent the GOB sale Debtor's profits would have been substantially less than were brought in as a result of the GOB sale. Finally, even if the Court were to assume for the moment there is a conflict between Debtor's covenant to maximize profits under the Lease and a debtor-in-possession's duty to maximize assets for the estate, the latter would certainly take precedent upon the filing of a bankruptcy petition.

■ Finally, Hayday's argument hinges on a finding that Debtor was required under the Lease to operate continuously. Hayday claims to find support in Article III of the Lease, which provides:

The Tenant agrees to conduct continuously in the leased premises.

Interestingly, Hayday fails to harmonize this provision with others in the Lease. For instance, the Lease provides for assignment and subletting with the Landlord's consent (such consent not to be unreasonably withheld). (Lease at 12–13.) Alterations, additions or improvements (with Landlord's approval) are also contemplated under the Lease. Such provisions require at least a brief cessation of business. To read the Lease as permitting no break in operation would render the Lease internally inconsistent because the same act, permissible under one Lease provision, would place Debtor in default under another. Accordingly, because lease agreements are to be construed in favor of the tenant and against the landlord,[1] the Lease should not be interpreted as requiring continuous operation at all times.

■ Nevertheless, assuming the Lease may be read as requiring Debtor to operate

---

1. *Forman v. United States,* 767 F.2d 875, 880 (Fed.Cir.1985); *See* 1 American Law of Property   § 3.40 (A. Casner ed. 1950).

continuously, the bankruptcy court is still required to balance the resulting hardships between Hayday and Debtor. The question, therefore, is whether the gap between the closing of the Miami Store and the assignment to K–Mart was reasonable. In *Ames*, Judge Buschman determined that Schottenstein Stores Corporation, an assignee of a Zayre store located in Westmont, Illinois, did not violate a percentage rent clause contained in its lease when it closed the store for 120 days to perform alterations at the premises. The court overruled a landlord's objections that closing the store violated the lease's percentage rent clause, reasoning that the lease permitted tenant alterations, therefore it contemplated closing the store to make alterations notwithstanding a percentage rent clause and a provision requiring continuous operation. *In re Ames Department Stores, Inc.*, 121 B.R. 160, 162, n. 2. (Bankr.S.D.N.Y.1990).

Here, we find the period between the closing of the Miami Store and the assignment to K–Mart reasonable. Debtor made known to Hayday its intention to close the Miami Store within the first 60 days of filing its petition. At the close of a court-authorized GOB sale, an auction was held for the sale of the Miami Store Lease at which K–Mart prevailed as the successful bidder. Debtor then sought approval for the assumption and assignment of the Lease. After the auction, but prior to the filing of Debtor's assumption and assignment motion, Hayday moved to have the Lease deemed rejected and interposed objections to the assignment of the Lease to K–Mart. A stipulation for the assumption and assignment of the Lease was reached and an order issued during the trial held in December, 1990.

■ Hayday maintains that Debtor is responsible for the delay in the assumption/assignment process. Specifically, the Lease contained a radius provision prohibiting the tenant from operating another store within three miles of the Miami Store. At the time it was proposed as assignee, K–Mart operated a store 1.9 miles from the Miami Store. As part of the stipulation authorizing the assignment, K–Mart agreed to close its other location within fourteen days of the reopening of the Miami Store. Hayday argues the time lag could have been avoided had Debtor proposed an assignee capable of satisfying the radius requirements of the Lease. The Court finds that if Debtor's proposal of an assignee who violates the radius requirement of the Lease were considered a breach, it would be de minimus in this instance where the assignee agreed to correct the violation within fourteen days of the reopening of the Miami Store.

■ The Code accords shopping center landlords and its tenants certain safeguards in the assumption/assignment process.[2] *In re 905 Inter. Stores, Inc.*, 57 B.R. 786 (E.D.Mo.1985). However, the fact that the assignee may not satisfy these statutory requirements at the outset of the assumption/assignment process does not amount to a showing of bad faith by the debtor, especially where, as is well illustrated here, the parties are able to resolve the obstacle to the proposed assignee's fitness as a tenant.

Debtor asserts that the delay in the assumption/assignment process was the result of objections interposed by Hayday at each turn in the assumption/assignment process. Hayday interposed no less than five objections to the proposed actions by Debtor with respect to the Lease. In fact, Hayday concedes that the only reason it did not object to Debtor's motion for authority to conduct a GOB sale was the result of its failure to receive timely notice of the motion. (Hayday Supplemental Memorandum, at p. 4.) Had Hayday agreed to negotiate with Debtor's proposed assignee, K–Mart, long ago, the gap period during which the Miami Store was closed for busi-

**2.** Among these safeguards is the requirement "that *assumption or assignment of such lease is subject to all provisions thereof, including (but not limited to) provisions such as radius*, location, use, or exclusivity provisions, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; . . . ." 11 U.S.C. § 365(b)(3)(B). (emphasis added).

ness could have been substantially reduced. The resultant lease between Hayday and K–Mart demonstrates that Debtor's proposed assignee was indeed capable of satisfying the provisions of the Lease between Hayday and Debtor.

Based upon all of the foregoing, Hayday's motion is denied, the Court holding that no sums are due and payable by Zayre Florida Corp. to Hayday, Inc.

The foregoing constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

An appropriate order shall issue.