**In re AMES DEPARTMENT STORES, INC., Debtor.**

**The HUNNICUTT COMPANY, INC., Plaintiff,**

v.

**The TJX COMPANIES, INC., formerly known as Zayre Corp., Defendant.**

95 Civ. 3890 (JGK).

United States District Court, S.D. New York.

Dec. 31, 1995.

**158**

Peter W. Homer, Jay A. Gayoso, Homer & Bonner, P.A., Miami, Florida, Gary Gerrard, Gerrard & Powers, Coral Gables, Florida, for Plaintiff.

Douglas H. Meal, James W. Matthews, E. David Pemstein, Ropes & Gray, Boston, Massachusetts, for Defendant.

### OPINION AND ORDER

KOELTL, District Judge:

This is an action by plaintiff The Hunnicutt Company, Inc. ("Hunnicutt") against defendant The TJX Companies, Inc. ("TJX") asserting state law claims for money damages

---

**1.** On September 27, 1995, while these two motions were under submission, Hunnicutt filed a motion to transfer under 28 U.S.C. § 1404(a). That motion was stayed pending disposition on

arising from unpaid rent and property damage. Hunnicutt is the lessor of certain commercial property in Atlanta, Georgia. TJX is the guarantor on the lease. The tenant, Ames Department Stores, Inc. ("Ames") filed for bankruptcy in April 1990. The complaint in this matter was filed originally in the United States District Court for the Middle District of Georgia (Owen, J.) and was transferred subsequently to the bankruptcy court for the Southern District of New York by order dated January 12, 1995. Hunnicutt has moved (i) to transfer the case pursuant to 28 U.S.C. § 1631 to the United States District Court for the Middle District of Georgia to cure an alleged defect in jurisdiction in this Court, or, alternatively (ii) to withdraw the reference from the bankruptcy court for the Southern District of New York (Goodman, B.J.) pursuant to 28 U.S.C. § 157(d).

For the reasons that follow, Hunnicutt's motions to transfer the case for want of jurisdiction and to withdraw the reference from the bankruptcy court are denied.[1]

### I.

This case arises out of a 1971 lease (the "Lease") by Hunnicutt to Zayre of Georgia, Inc. TJX, known at that time as Zayre Corp, and the parent of Zayre of Georgia, guaranteed the lease on behalf of its subsidiary. In 1988, as part of the transfer of TJX's Zayre Stores Division, Ames assumed the Lease, agreed to indemnify TJX, and TJX became guarantor for Ames' obligations under the Lease. In 1990 Ames filed for bankruptcy under Chapter 11 in the Southern District for New York and rejected the Hunnicutt Lease pursuant to 11 U.S.C. § 365. Hunnicutt then filed a claim in the bankruptcy case against Ames for rent due under the Lease and for property damages to the premises. In due course, a reorganization plan (the "Reorganization Plan" or "Plan") was adopted and confirmed, and Ames proceeded to begin operations as a reorganized company. Hunnicutt's claims

the present motions. Because this matter will proceed before the bankruptcy court, Hunnicutt's § 1404(a) motion is dismissed without prejudice to renewal before Judge Goodman.

against Ames were to be resolved as part of a large number of such claims brought by various Ames landlords under the leases that Ames rejected in bankruptcy (the "Rejected Zayre Leases").

In 1994 Hunnicutt brought this action in the United States District Court for the Middle District of Georgia (Owen, J.) against TJX as guarantor of the Ames Lease. The complaint alleges essentially the same rent due and property damage claims first brought against Ames in the bankruptcy case. TJX moved to dismiss the case or transfer it to the bankruptcy court on the basis that it was related to the bankruptcy case and therefore within the jurisdiction retained by the bankruptcy court in the Reorganization Plan. Judge Owen ordered the case transferred, holding that the suit was actually a challenge to provisions of the Reorganization Plan and should have been brought as an appeal of the Plan in the Southern District of New York pursuant to 28 U.S.C. § 158(a). *The Hunnicutt Co., Inc. v. The TJX Cos., Inc.,* C.A. 94–23–ATH (WDO), 1995 WL 800436 (M.D.Ga. Jan. 12, 1995) (*Hunnicutt I* ). Judge Owen explained that:

> The complaint filed by Hunnicutt in this court directly contradicts the jurisdictional retention clause of the Ames bankruptcy court. Thus for this court to hear Hunnicutt's complaint, it would be necessary to first determine the validity of the retention clause. Although this court has serious reservations about the validity of the jurisdictional retention clause, the court refuses to countenance the type of collateral attack advanced here by Hunnicutt.

*Hunnicutt I,* 1995 WL 800436, slip op. at 5 (citation omitted).

Immediately following the transfer, Hunnicutt petitioned the Court of Appeals for the Eleventh Circuit for a writ of mandamus vacating the transfer order. The petition was based on the absence of any expressed statutory authority for the transfer in Judge Owen's order. The Court of Appeals denied the writ. *See In re: The Hunnicutt Co., Inc.,* No. 95–8061 (11th Cir. Mar. 30, 1995) (*Hunnicutt II* ). Rather than reach the merits of the transfer, however, the Court determined that the bankruptcy court for the Southern District of New York had at least

concurrent jurisdiction over Hunnicutt's claim. *Hunnicutt II,* slip op. at 6. Following the decision, Hunnicutt petitioned for rehearing and suggested rehearing *en banc,* and those petitions were both denied. *See In re: The Hunnicutt Co., Inc.,* No. 95–8061 (11th Cir. May 16, 1995) (*Hunnicutt III* ). Hunnicutt then brought the motions now pending.

## II.

In its first motion Hunnicutt argues that there is no jurisdiction in this Court or the bankruptcy court for the Southern District of New York. Therefore, Hunnicutt maintains, this case should be transferred pursuant to 28 U.S.C. § 1631 to the Middle District of Georgia where Hunnicutt contends jurisdiction is proper. Section 1631 provides:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ... and the action ... shall proceed as if it had been filed in ... the court to which it is transferred....

28 U.S.C. § 1631.

Hunnicutt argues that Judge Owen and the Court of Appeals for the Eleventh Circuit were wrong to conclude that the Ames bankruptcy court had even concurrent jurisdiction over this case. Consequently, this motion represents Hunnicutt's fourth attempt to persuade a court that its suit against TJX is not related to the Ames bankruptcy. After conducting an independent review of the law governing the bankruptcy court's jurisdiction, I reach the same conclusion as the other courts to which Hunnicutt has proffered this jurisdictional argument.

## A.

Whether this matter is properly before this Court or the bankruptcy court at all is governed by 28 U.S.C. § 1334(b), which provides that:

> [T]he district courts shall have original but not exclusive jurisdiction of all civil pro-

ceedings arising under title 11, or arising in or *related to cases under* title 11.

28 U.S.C. § 1334(b) (emphasis added). In turn, such matters properly before the district court may be referred to the bankruptcy court. 28 U.S.C. § 157(a) (using same "related to" phrase). The question is whether Hunnicutt's suit against TJX for damages under the Lease is "related to" the Ames bankruptcy case which is pending before the bankruptcy court for the Southern District of New York.

■ As the Court of Appeals for the Second Circuit has explained:

> The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any "conceivable effect" on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court.

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114 (2d Cir.1992) (citing *Turner v. Ermiger (In re Turner),* 724 F.2d 338, 340–41 (2d Cir. 1983)). The Court then cited *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) with respect to the phrase "conceivable effect." *Cuyahoga,* 980 F.2d at 114. In *Pacor,* the Court of Appeals for the Third Circuit enunciated the following test:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.... Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor,* 743 F.2d at 994 (citations & emphasis omitted). *See Celotex Corp. v. Edwards,* —— U.S. ——, —— n. 6, 115 S.Ct. 1493, 1499 n. 6, 131 L.Ed.2d 403 (1995) (recognizing *Pacor* formulation adopted in First, Fourth, Fifth,

Sixth, Eighth, Ninth, Tenth & Eleventh Circuits).

While some district courts had questioned whether the formulation in *Turner* of a "significant connection" was synonymous with the "conceivable effect" formulation set forth in *Pacor, see, e.g., Weisman v. Southeast Hotel Properties,* No. 91 Civ. 6232, 1992 WL 131080, at *3 (S.D.N.Y. June 1, 1992) (assuming *Turner* to be narrower than *Pacor*); *Widewaters Roseland Ctr. Co. v. TJX Co.,* 135 B.R. 204, 206 & n. 4 (N.D.N.Y.1991) (same), it is now clear that there is no difference. *See Cuyahoga,* 980 F.2d at 114 (either "conceivable effect" or "any significant connection" establishes jurisdiction under § 1334(b), citing both *Pacor* and *Turner*); *see also Nemsa Establishment, S.A. v. Viral Testing Systems Corp.,* No. 95 Civ. 0277, 1995 WL 489711 (S.D.N.Y. Aug. 15, 1995) (Preska, J.); *Grillo v. Zurich Ins. Co.,* 170 B.R. 66, 68 (S.D.N.Y.1994) (Sweet, J.); *Neuman v. Goldberg,* 159 B.R. 681, 687 (S.D.N.Y. 1993) (Sweet, J.); *Monaco v. United States Dep't of Educ. (In re County Sch., Inc.),* 163 B.R. 424, 428 & n. 3 (Bankr.D.Conn.1994).

■ The Supreme Court, while neither endorsing nor adopting either formulation, appeared to establish the minimum required for "related to" jurisdiction under § 1334(b). In *Celotex* the Court explained that "whatever test is used, [*Pacor, Turner,* and their progeny] make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex,* —— U.S. at —— n. 6, 115 S.Ct. at 1499 n. 6; *see id.,* —— U.S. at —— n. 5, 115 S.Ct. at 1504 n. 5 (Ginsberg, J., dissenting) (agreeing to defer addressing correctness of either test).

■ In any event, it is unnecessary in this case to decide the precise impact of *Celotex* on the test adopted in this Circuit under *Cuyahoga* because Hunnicutt's claim does have an effect on the estate of the debtor. Hunnicutt's claim against TJX on the Lease is related to the bankruptcy case because the outcome of the dispute has the potential to alter the distribution of the debtor's estate to creditors. The key to the relationship of the Hunnicutt–TJX dispute to the Ames bankruptcy is the mechanism by which lessors'

claims under the Rejected Zayre Leases are to be reimbursed.

## B.

Under Article VII of the Reorganization Plan, (*see* Affidavit of Douglas H. Meal, executed June 5, 1995, Ex. B), claims against Ames or TJX on the Rejected Zayre Leases are to be paid by TJX. The Reorganization Plan provides further that Ames is bound to indemnify TJX for certain percentages of such payments by issuing a note in the amount of the total payments. This note, (the "TJX Expense Note"), will cover Ames' share of settlements, judgments, and certain expenses of the Rejected Zayre Leases, subject to an aggregate maximum of $2.7 million. (*See* Meal Aff., Ex. B, arts. I.B.1.257, VII.I.) Using Hunnicutt's characterization, the TJX Expense Note "fully satisfies" Ames' obligation to TJX on the indemnification of payments made on the Rejected Zayre Leases. Nonetheless, and as Hunnicutt does not dispute, the *amount* of the TJX Expense Note is not fixed and will not become so until each landlord's claim against TJX or Ames is resolved. Ames is obligated to issue the Note in whatever that amount turns out to be, subject to the maximum of $2.7 million. (*See* Meal Aff.Ex. B.)

The mechanism created by the TJX Expense Note leads to real consequences for Ames from the resolution of the dispute between Hunnicutt and TJX. The resolution of the Hunnicutt–TJX dispute will affect the value of the stock in the reorganized Ames, stock that many creditors receive under the Plan. The value of the stock will be diminished to the extent the reorganized Ames must fund the TJX Expense Note in a greater amount, up to the maximum of $2.7 million, as a result of any liability to Hunnicutt. While TJX represents that Ames has reserved for the maximum amount of the TJX Expense Note, ultimately, if the Note is less than the amount of the reserve, the release of the reserve corresponding to the unpaid amount would increase Ames' net worth and the value of the shareholders' equity.

Furthermore, in this particular case, Hunnicutt will be bound by any adjudication of its rights with respect to the Lease in its suit against TJX. If Hunnicutt loses on its claim against TJX, the preclusive effect may prevent Hunnicutt from recovering on its bankruptcy claim against Ames that might otherwise be chargeable against the TJX Expense Note.

In short, the resolution of Hunnicutt's claim against TJX under the Lease is inextricably intertwined with the implementation and administration of the Reorganization Plan, including the value of the equity in the reorganized Ames, the value that creditors receive, and the potential liability of Ames to Hunnicutt and to TJX.

Certainly, an action against TJX as guarantor of the Lease brought before confirmation would be related to the bankruptcy. *See Widewaters Roseland,* 135 B.R. at 207–09; *Krafchick v. Zayre of East Providence, Inc.,* 137 B.R. 560, 560 (D.Mass.1991); *Dollar Bank v. The TJX Cos., Inc.,* No. Civ.A. No. 90–1278, 1991 WL 328464, at *1 (W.D.Pa. Aug. 30, 1991); *Kossman v. The TJX Cos., Inc.,* 136 B.R. 640, 641–42 (W.D.Pa. June 17, 1991); *Apex Inv. Assocs., Inc. v. TJX Cos., Inc.,* 121 B.R. 522, 524–27 (N. & E.D.Ill. 1990); *Douglas Corp. v. TJX Cos., Inc.,* 141 B.R. 958, 958–59 (N. & E.D.Ill.1990); *see also In re Brentano's, Inc.,* 27 B.R. 90, 92 (Bankr.S.D.N.Y.1983). *But see Chesapeake Crossing Assocs. v. The TJX Cos., Inc.,* No. Civ.A. 2:92CV631, 1992 WL 469801, at *3 (E.D.Va. Oct. 9, 1992). These cases each involve a landlord's claim against TJX as guarantor on a Rejected Zayre Lease.

The fact that the Plan is confirmed and the reorganized Ames is operating is irrelevant in light of the structure of the TJX Expense Note. This structure perpetuates the susceptibility of the debtor's estate to the suit by Hunnicutt against TJX in the ways described above. Therefore, this case falls within the scope of "related to" jurisdiction under § 1334(b), whether that scope is defined as "conceivable effect" or "significant connection."

In its decision denying Hunnicutt's petition for mandamus, the Court of Appeals for the Eleventh Circuit applied the *Pacor* test and arrived at the same conclusion. *See Hunnicutt II,* slip op. at 5–6 (citing *Miller v. Kemi-*

*ra, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990) (adopting *Pacor* )). The Court explained that:

> Hunnicutt's argument ignores the fact that any damages it may win in this civil proceeding will reduce the amount it can claim in the bankruptcy proceedings and thereby benefit the other holders of Zayre landlord claims. Because a victory for Hunnicutt in its civil proceedings will directly affect the handling and administration of the estate, the New York bankruptcy court had subject matter jurisdiction under § 1334(b) and consequently maintained at least concurrent jurisdiction over this case.

*Id.,* slip op. at 6.

The Court of Appeals for the Eleventh Circuit specifically rejected the argument that the bankruptcy court had no jurisdiction because the Reorganization Plan had been confirmed two years before. The confirmation of the Plan is not dispositive because the the Plan itself provides that the bankruptcy court retained jurisdiction over actions on the Rejected Zayre Leases. Article XIII(15) provides that the bankruptcy court shall "hear and determine all disputes arising under any Zayre Rejected Lease including without limitation any action brought against TJX in respect of any Zayre Rejected Lease as to which TJX may be liable (as tenant, as surety, or as guarantor)...." (Meal Aff.Ex. B, art. XIII(15).)

Hunnicutt does not escape the jurisdiction of the bankruptcy court by waiting until the Plan was confirmed before bringing its suit because the timing of its claim does not change the effect the outcome has on the distribution of the debtor's estate. Because the bankruptcy court had proper jurisdiction over these related claims under § 1334(b) and § 157(a) before confirmation of the Plan, that jurisdiction could be properly retained pursuant to Article XIII of the confirmed Plan. *See Hospital & Univ. Property Damage Claimants v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 34 (2d Cir.1993) ("A bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization. The bankruptcy court's post-confirmation jurisdiction there-

fore is defined by reference to the Plan." (citations omitted)). Accordingly, the bankruptcy court has jurisdiction over Hunnicutt's claim against TJX pursuant to § 1334(b), § 157(a), and the retained jurisdiction provisions of the Reorganization Plan.

### III.

Hunnicutt also moves to withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d), which provides in relevant part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

Whether to withdraw the reference requires application of the factors set forth in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101–02 (2d Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). As the Court of Appeals explained:

> A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn.... [O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.

*Orion,* 4 F.3d at 1101. Judge Owen has already held that this suit between non-parties to the bankruptcy is non-core and there is nothing presented by the parties to suggest that his determination should be revisited. *See Hunnicutt I,* 1995 WL 800436, slip op. at 5. In light of Hunnicutt's jury demand, the threshold question turns on whether the reference must be withdrawn on the basis of the first *Orion* factor alone.

### A.

*Orion* holds that "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Orion,* 4 F.3d at 1101. The timing of the withdrawal

of the reference, however, still depends on the particular circumstances of each case, including whether the case is likely to reach trial, whether it involves lengthy discovery or careful pretrial guidance by the court, or whether the jury demand is without merit. *Id.* See also *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61–62 (S.D.N.Y.1992) (Wood, J.) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts.").

■ Hunnicutt has not offered reasons sufficient to withdraw the reference at this time. The case is not yet ready for trial and Judge Goodman's familiarity with the circumstances of the Ames bankruptcy and the TJX lease guarantees continues to promote the smooth and efficient resolution of Hunnicutt's claim. And, while Hunnicutt correctly points out that any determination by Judge Goodman on a non-core matter such as this is subject to *de novo* review by this Court, *see* 28 U.S.C. § 157(c)(1), *Orion,* 4 F.3d at 1100–01, it is equally true that Judge Goodman has a better vantage point from which to make proposed findings of fact and conclusions of law in the first instance.

The Hunnicutt–TJX claim raises some of the same issues as the Hunnicutt–Ames claim does, as well as involving a factual scenario between lessor and guarantor with which Judge Goodman is no doubt accustomed given the numerous other suits on Rejected Zayre Leases brought by lessors against TJX which have come before him. Moreover, the motions before Judge Goodman now in the Hunnicutt–TJX case are cross-motions for summary judgment—evidently both TJX and Hunnicutt believe their dispute can be settled as a matter of law. If either party is correct, no jury will be required. This Court's review of the bankrupt-cy court's legal conclusions, whether on review of a report and recommendation made on the dispositive motions now pending or on any other determination, would be *de novo,* even in core proceedings. *See Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990) (both district court and Court of Appeals review bankruptcy court's conclusions of law *de novo* ); *Crysen/Montenay Energy Co. v. Cons. Edison Co. of New York, Inc. (In re Crysen/Montenay Energy Co.)*, 156 B.R. 922, 924 (S.D.N.Y.1993) (district court reviews bankruptcy court's grant of summary judgment *de novo* ); *aff'd,* 19 F.3d 9 (2d Cir.1994).

Accordingly, even assuming for the purposes of this motion that Hunnicutt is entitled to a jury trial, I find that withdrawal of the reference would be premature.[2]

### B.

None of the remaining *Orion* factors weigh in favor of withdrawal of the reference at this time. The most efficient use of judicial resources is to permit the case to go forward in the bankruptcy court. Although Hunnicutt argues that the entitlement to *de novo* review would make the bankruptcy court determination "superfluous," that line of reasoning would prevent any non-core matter from ever being referred to the bankruptcy court. Without more, this argument carries little, if any, weight in favor of withdrawal. Hunnicutt also argues that discovery has been and will continue to be conducted in Georgia and that proceedings to compel depositions from witnesses residing there must be brought before a Georgia court. None of these purported inefficiencies will be alleviated at all by the withdrawal of the reference, and therefore these factors do not militate in favor of proceeding with the case in the district court.

In sum, none of Hunnicutt's arguments support its contention that withdrawal of the reference would promote an efficient use of

---

**2.** Because I find that withdrawal of the reference is not appropriate at this time notwithstanding any jury trial right Hunnicutt may have, I do not reach TJX's argument that Hunnicutt waived such a right by voting to confirm the Reorganiza-tion Plan. As the parties conceded at oral argument, that issue can be raised before Judge Goodman in the first instance. (*See* Tr. of Oral Arg. dated Aug. 18, 1995, at 27, 47.)

judicial resources. Indeed, for this Court to become familiar with the facts and law of this case would duplicate much of what Judge Goodman has already accomplished. *See, e.g., In re Ames Dep't Stores, Inc.,* 136 B.R. 353 (Bankr.S.D.N.Y.1992), 136 B.R. 357 (Bankr.S.D.N.Y.1992), 158 B.R. 35 (Bankr. S.D.N.Y.1993), 150 B.R. 107 (Bankr.S.D.N.Y. 1993), 161 B.R. 87 (Bankr.S.D.N.Y.1993), 173 B.R. 80 (Bankr.S.D.N.Y.1994). Plainly, the most efficient use of judicial resources is for this matter to remain before the bankruptcy court where Judge Goodman may decide the cross-motions for summary judgment which are fully briefed and pending before him.

With respect to delay and cost to the parties, Hunnicutt reasserts its argument that *de novo* review creates a waste of effort, money, and time. This argument is no more persuasive that it was when offered under the rubric of judicial efficiency. In fact, it is difficult to understand Hunnicutt's position given that the cross-motions for summary judgment are fully submitted and pending before Judge Goodman.

Hunnicutt's argument that withdrawal of the reference will not interfere with uniformity of bankruptcy administration is also unavailing. Not only is the distribution of the Ames estate affected by the resolution of Hunnicutt's claims against TJX, as described earlier in part II.B., *supra,* there are numerous other claims by lessors against TJX that were transferred to the bankruptcy court. Concern for uniformity suggests that Hunnicutt's claim against TJX as guarantor on a Rejected Zayre Lease should be treated similarly.

Finally, Hunnicutt argues that TJX has engaged in forum shopping designed to burden Hunnicutt with litigating its claim in an inconvenient forum. While it may be true that the transfer of this case from Georgia to the bankruptcy court for the Southern District of New York is less than ideal from Hunnicutt's perspective, it was a transfer ordered initially by a Georgia district court, ratified by the Court of Appeals for the Eleventh Circuit's denial of the petition for mandamus, and ratified yet again when rehearing and rehearing *en banc* on the mandamus petition were denied. Moreover, TJX took similar steps to transfer other suits brought by lessors under the Rejected Zayre Leases from other jurisdictions. There is no evidence that Hunnicutt has been treated any differently from other lessors, and there is a compelling reason based on uniformity and efficiency for treating Hunnicutt's claim in the same manner as those of other landlords. TJX, of course, denies any bad faith, accusing Hunnicutt of similar procedural gambits. Hunnicutt responds by arguing that TJX "manipulated the bankruptcy process to bring into the bankruptcy court cases against TJX for its own independent liability to Zayre landlords." (Defs.Mem.Opp'n at 11.) This allegation appears to be, at its core, a challenge to the retention of jurisdiction provisions of the Reorganization Plan. The district court in Georgia found Hunnicutt's entire suit against TJX to be such a challenge and to constitute an appeal from the order confirming the Plan—an appeal that Judge Owen believed should have been brought to this Court at the outset. *Hunnicutt I,* 1995 WL 800436, slip op. at 5–6; *see* 28 U.S.C. § 158(a). In any event, Hunnicutt does not raise these concerns for disposition on their merits, but rather as some indication that TJX has engaged in forum shopping. Nevertheless, I find no meaningful evidence on the record before me of impermissible forum shopping that would justify withdrawal of the reference.

Having reviewed the *Orion* factors in light of the circumstances of this case, the Court finds that withdrawal of the reference under 28 U.S.C. § 157(d) is not appropriate at this time. Hunnicutt's motion to withdraw the reference is therefore denied.

## IV.

For the foregoing reasons, the motion to transfer this case to the United States District Court for the Middle District of Georgia pursuant to 28 U.S.C. § 1631 for want of jurisdiction is **denied,** and the motion to withdraw the reference pursuant to 28 U.S.C. § 157(d) is **denied.**

**SO ORDERED.**