In re SHOWCASE NATURAL CASING CO., INC., Debtor.

EQUIMARK COMMERCIAL FINANCE CO., Plaintiff,

v.

FIRST NATIONAL BANK OF CINCINNATI and Can Am Casing, Inc., Defendants.

Adv. No. 1–83–0410.
Related Case No. 1–83–01227.

United States Bankruptcy Court, S.D. Ohio, W.D.

May 17, 1984.

Timothy J. Hurley, Cincinnati, Ohio, for defendant-First Natl. Bk. of Cincinnati.

Matthew T. MacLeid, Cincinnati, Ohio, for defendant-Can-Am Casing, Inc.

Lawrence R. Elleman, Jerry S. Sallee, Cincinnati, Ohio, for Equimark Commercial Fin. Corp.

### DECISION AND ORDER

### (DENYING MOTION TO DISMISS)

BURTON PERLMAN, Bankruptcy Judge.

The bankruptcy case to which this adversary proceeding is related is a Chapter 7 case. Defendant First National Bank of Cincinnati (Bank) moved to dismiss the proceeding for lack of subject matter jurisdiction, or in the alternative has requested that the Court abstain from exercising jur-

isdiction. We earlier wrote Decision re Jurisdiction (Doc. # 15) in which we stated that we could not decide the motion on what was then before us, but that an evidentiary hearing would be required. Bank and plaintiff responded to this direction by submitting a stipulation of facts and agreeing that the motion could be decided on the basis of that stipulation. Defendant, Can Am Casing, Inc (Can Am) is not a party to the stipulation and is not participating in Bank's motion.

To set the stage we repeat a summary of the complaint which is contained in our prior Decision:

Equimark Commercial Finance Co. is a creditor of the debtor and the plaintiff in an adversary proceeding in which the First National Bank of Cincinnati (Bank), the debtor's bank, and Can-Am Casing, Inc. (Can-Am), another creditor of the debtor's, are named as defendants. Neither the debtor nor the trustee has been named as a defendant. Plaintiff claims that it is a secured creditor of the debtor, being secured, *inter alia*, by all fo the debtor's open accounts receivable and any proceeds thereof. The complaint alleges that the debtor caused a check in the amount of $41,607.00 to be drawn on its account at the Bank, payable to Can-Am. Plaintiff alleges that the money paid by the Bank to Can-Am represents 'proceeds' of property belonging to plaintiff, or alternatively, that the payments represent 'proceeds' of property belonging to the estate pursuant to 11 U.S.C. § 541(a)(6). Plaintiff also asserts that the Bank's actions in withdrawing funds from debtor's account and in paying Can-Am, violated 11 U.S.C. § 542(b) and that any transfer of money received by Can-Am is voidable under 11 U.S.C. § 549(a)(1) and (2)(B). On May 31, 1983, the trustee abandoned the rights of the debtor to any accounts receivable to which it is entitled.

From the stipulation we find the following facts. The bankruptcy petition in this case was filed May 6, 1983. Prior to that time, on April 7, 1983, debtor wrote a check for $41,607.55 to Can Am which deposited

the check for collection at an intermediate bank on April 18, 1983. The check was presented to the Bank for payment on April 19, 1983. On that date there were insufficient funds in the account of the debtor to cover the account. Bank did not return the check to the intermediate bank which had forwarded it to Bank on April 20, 1983, but had telephone communication with debtor on April 20 and April 21, on the latter date Ms. Newport of debtor, requesting return of the check. Bank attempted to return the check to the intermediate bank only on April 26, 1983. Debtor executed a stop payment order on the check.

It is expressly stipulated between Bank and plaintiff that Bank did not consider its request on April 21, or the stop payment order on April 26, to be timely. Bank gained knowledge of the bankruptcy at the latest on May 10, 1983. On May 6, 1983, debtor had $267.10 on deposit at the Bank. None of that fund originated in accounts receivable.

Subsequent to May 6th, debtor by mistake deposited accounts receivable collections in its account with Bank rather than transmitting them to plaintiff as had been its practice and indeed its responsibility. The funds subsequently deposited by debtor with Bank originated with accounts receivable and totalled $29,141.08.

On May 23, 1983 Can Am re-presented the check for $41,607.55 to Bank. Bank honored the check though only $26,959.72 was in the account. As a result there was a negative balance of $14,647.58. On May 23, 1983 Bank sent an over-draft notice to the debtor. On May 23, 1983 Bank sent an over-draft notice to the debtor. On May 31, 1983, trustee abandoned his rights to any accounts receivable. On September 7, 1983, plaintiff filed a proof of claim as an unsecured creditor, to the extent that it was unsecured.

Since the decision by the U.S. Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the jurisdictional basis for this court is to be found in an Order entitled In Re Operation Of The Bankruptcy Court System, filed December 23, 1982. The Sixth Circuit has held that basis to be constitutional in *White Motor Corp. v. Citibank, N.A.* 704 F.2d 254 (6th Cir.1983). That Order in pertinent part provides:

"(d) Powers of Bankruptcy Judges.

\*      \*      \*      \*      \*      \*

(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to the entry of the judgment or order by the bankruptcy judge.

\*      \*      \*      \*      \*      \*

It is the position of Bank that the adversary proceeding before us is not a "related" proceeding with respect to the Showcase bankruptcy.

We will not dwell upon the Bank's contention that this court is without subject matter jurisdiction because of the Supreme Court decision in *Northern Pipeline.* We have already rejected that position in *In re Kuempel,* 55 B.R. 3 (Bankr.S.D.1983), and adhere to that position.

We turn then to the central issue to be dealt with in the motion at hand. It is the position of the Bank that the adversary proceeding before us is not a "related" proceeding with respect to the Showcase bankruptcy. As support for its contention, the Bank refers to 1 *Collier on Bankruptcy* (15th ed.), ¶ 3.01 at p. 3–49. The text there presents the proposition that a Bankruptcy Court will hold that it is without jurisdiction in cases which are too tangential to the bankruptcy case. As examples of cases in that category, the Bank cites *In re Bottles,* 20 B.R. 947 (Bankr.C.D.Ill.1982) (Where personal property was abandoned by trustee and is no longer part of the estate, controversy between secured party claiming proceeds of the personal property and other nondebtor is not within the subject matter jurisdiction of the bankruptcy court under 28 U.S.C. § 1471); *In re Lunsford,* 12 B.R. 762 (Bankr.M.D.Ala.1981) (Controversy between creditors regarding entitlement to proceeds, where trustee is making no claim, is so far removed from administration of the case that court is without subject matter jurisdiction over the controversy); *In re Curtina International,* 15 B.R. 993 (Bankr.S.D.N.Y.1981) (Court *sua sponte* dismisses for lack of subject matter jurisdiction private controversy between two parties, neither of whom was the debtor or trustee, involving a dispute in which the trustee had no interest).

There is, however, a countervailing line of authority which inevitably comes into opposition to that advanced by the Bank. The test for whether a proceeding is "related" to the bankruptcy case according to that line is whether the proceeding could have some "conceivable effect" on the administration of the bankruptcy estate. *See In Re U.S. Air Duct Corp.,* 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981). Cases suggested

by plaintiff to be on point are *In re Wesco Products Co.,* 19 B.R. 908, 909 (Bankr.N.D. Ill.1982), (Suit by creditor against corporate debtor's secretary personally held related because outcome will affect schedule of assets and liabilities); *In re Hartley,* 16 B.R. 777 (Bankr.N.D.Ohio 1982), (Guarantors of debtor's obligation motion to be dismissed as parties from mortgage foreclosure and dischargeability suit against debtor in which guarantors are joined, is denied); *In re Lewis Carpet Mills, Inc.,* 15 B.R. 172 (Bankr.N.D.Ga.1981), (Suit by debtor's factor to collect account receivable from third party obligor of debtor. Motion to dismiss denied because outcome will possibly affect the amount of the factor's unsecured claims).

■ We recognize that there is a tension between the respective authorities presented by the parties. They are not, however, completely incompatible. We can accept the doctrine of those of plaintiff in the case before us without rejecting those of the Bank in a proper case. That is, we are persuaded that the proceeding at hand is sufficiently related to the bankruptcy case to withstand dismissal, and is not too tangential to the bankruptcy case.

The requisite relationship exists because the bankruptcy case cannot be closed until the present proceeding is resolved. That is, the claim of Equimark must be fixed before the trustee can prepare for and complete distribution of any assets to creditors. If this court were to be without jurisdiction, the basic purpose of the Bankruptcy Reform Act of 1978 would be defeated, for the basic purpose of that Act was to make it possible that bankruptcy estates be administered and closed with expedition. Before the Bankruptcy Reform Act, many matters, including the liquidation of claims were litigated in the state courts, and were subject to the uncertainties and long delays which inhere in the operations of those courts. Such impediments to closing cases would be especially obvious today when speedy trial in criminal cases has overwhelmed the capacity of state courts to dispose of civil matters in a reasonable time. In the Bankruptcy Reform Act, Con-

gress meant to provide a means to overcome these problems in bankruptcy cases.

We note that the Bank presents an argument in rebuttal to the proposition that the outcome of the proceeding under discussion may affect the bankruptcy case. That argument is that regardless of the outcome, the total claims by unsecured claimants will remain the same and the bankruptcy case unaffected, for to the extent that plaintiff is successful in the proceeding, the losing party or parties will have an unsecured claim. This argument fails, however, for while plaintiff has filed a presumptively valid proof of claim, neither defendant has done so, and the time for filing claims has long since passed.

The Bank moves for abstention as an alternative to dismissal. This calls for but a short remark. We decline to abstain because the nature of the controversy here in issue deals with commercial law, a subject which no court is better qualified to deal with than this, notwithstanding that state law is involved.

Accordingly, the motion of the Bank to dismiss or to abstain is denied.

SO ORDERED.