**Charles C. HICKOX, Plaintiff,**

v.

**LEEWARD ISLES RESORTS, LIMITED, Defendant.**

**No. 98 Civ. 0249(RLC).**

United States District Court, S.D. New York.

April 23, 1998.

Litman, Asche & Gioiella, LLP, New York City, for plaintiff, Richard M. Asche, Russell M. Gioiella, of counsel.

Kravet & Vogel, LLP, New York City, for defendant, Donald J. Kravet, of counsel.

## OPINION

CARTER, District Judge.

This action arises out of plaintiff's suit to recover on two promissory notes issued to defendant. Defendant now moves to transfer the instant suit to bankruptcy court pursuant to 28 U.S.C. § 157(a).

### I. Background

Leeward Island Resorts, Limited ("LIR") is an Anguillan corporation that leased property at Maundays Bay, Anguilla, in order to open a luxury resort known as Cap Juluca. (Pl.'s Mem. of Law in Supp. of Motion to Refer at 1). HBLS, L.P. ("HBLS") is a New York limited partnership formed for the purpose of buying LIR's stock and developing the Cap Juluca resort. (Declaration of Donald J. Kravet dated February 10, 1998 ("Kravet Decl.") at 4). Cap Juluca's day-to-day operations are managed by another Anguillan corporation, Maundays Bay Management, Limited ("MBM"). Id. Charles C. Hickox had a controlling interest in MBM and was the sole director and an officer of LIR until approximately September, 1997. Id. He currently maintains the largest limited partnership interest in HBLS. Id.

In October, 1986, the owners of LIR's stock, consisting of three individuals and three corporate entities (collectively, the "Friedland Group"), sold all of the issued and

outstanding shares of LIR's stock to HBLS under a stock purchase agreement (the "Stock Purchase Agreement"). Id. Pursuant to this agreement, HBLS agreed to pay the Friedland Group in four annual installments and to deliver two partnership units in HBLS. Id. at 4, 5. Contemporaneously with their execution of the Stock Purchase Agreement, the parties entered into a pledge agreement (the "Pledge Agreement"), pursuant to which the Friedland Group received a pledge of LIR's stock to secure HBLS' obligations under the Stock Purchase Agreement. Id. at 5.

After making the initial payment under the Stock Purchase Agreement, HBLS defaulted in its payment obligations to the Friedland Group and, subsequently, contested the validity of the Pledge Agreement. Id. In late 1989, the Friedland Group sued to enforce the Pledge Agreement in New York State Supreme Court. By order dated June 30, 1993, the court upheld the validity of the Pledge Agreement and directed HBLS to transfer the shares of LIR to the Friedland Group. *Friedland v. Cap Juluca I*, Index No. 3058–91 (N.Y.Sup.Ct. June 30, 1993). After HBLS failed to comply with the court's order by July, 1993, the Friedland Group sought to hold HBLS in contempt. (Kravet Decl. at 6). HBLS' motion for an order modifying the court's decision was denied on December 16, 1993, and the Appellate Division, First Department, upheld the denial of HBLS' motion for modification.[1] *Friedland v. Cap Juluca Partners I*, 221 A.D.2d 284, 635 N.Y.S.2d 467 (1st Dept.1995).

On December 27, 1993, HBLS filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. Nevertheless, the Friedland Group continued to press its claims for LIR's stock and, in August, 1995, the parties agreed to mediate their dispute. On August 15, 1995, the bankruptcy court appointed Barry M. Monheit to serve as mediator for the parties. Id. at 7.

The parties eventually entered into a settlement agreement dated May 6, 1996 (the "Settlement Agreement"). Id. The Settlement Agreement was executed by Hickox on behalf of HBLS, MBM, LIR (collectively, the "Resort Entities"), and by Hickox in his capacity as a partner in HBLS and a shareholder of LIR and MBM. Id. at 8. Pursuant to the Settlement Agreement, the Resort Entities agreed to pay the Friedland Group approximately $5,000,000 in full satisfaction of its claims. Id. The parties secured this obligation by, among other things, a pledge of all of LIR and MBM's stock (the "Collateral"), together with stock powers endorsed in blank relating to such stock. The Settlement Agreement also provided for the continued role of the mediator and granted him certain powers to implement the terms and conditions of the settlement, including the resolution through arbitration of any post-confirmation disputes between or among the parties under the Settlement Agreement. Id.

The Settlement Agreement was confirmed by the bankruptcy court and was incorporated into HBLS' Plan of Reorganization. Id. Pursuant to Article IX of the Plan, the bankruptcy court retains jurisdiction over the debtor's case and is responsible for enforcing the Plan's provisions. (See Kravet Decl., Exhibit 9).

After making the first payment under the Settlement Agreement to the Friedland Group in December, 1996, the Resort Entities failed to make any subsequent payments. In March, 1997, the mediator declared the Resort Entities to be in default and put the Collateral up for sale. Id. at 9. The Friedland group submitted the only bid and was awarded the Collateral for $500,000. Id. at 10. The Friedland Group retained (and continues to retain) a deficiency claim against the Resort Entities, jointly and severally, on the $3.9 million owed to it under the Settlement Agreement. Id.

---

1. The Friedland Group also filed proceedings against HBLS and Hickox in the Anguilla High Court of Justice. The Anguilla High Court of Justice entered an injunction against Hickox and HBLS, prohibiting them from attempting to undermine the decision of the New York State Supreme Court requiring that they transfer ownership interests in the shares of LIR to the Friedland Group. (See Kravet Decl., Exhibit 5).

By order to show cause dated September 18, 1997, the Friedland Group sought entry of an order 1) compelling Hickox to submit certain disputes to the Mediator and 2) enjoining Hickox from commencing certain legal actions, including attempts to collect on two promissory notes that were issued by LIR to Hickox: the first dated July 31, 1990, in the principle amount of $5,082,826.53; the second dated January 1, 1995, in the principal amount of $3,962,830.41.[2] Id. at 11, 13. The bankruptcy court directed that the mediator, acting as arbitrator, would decide these disputes between the parties. Id.

On November 12, 1997, the mediator determined that Hickox had violated the Settlement Agreement and awarded the Friedland Group attorney's fees and costs against Hickox as a result of his breach.[3] (See Kravet Decl., Exhibit 16). The mediator also ruled that Hickox could sue LIR to collect on the indebtedness arising from the promissory notes, if any, owed to him. Id.

On January 5, 1998, Hickox commenced an action in the New York Supreme Court seeking ex parte relief in the form of certain temporary restraints and the payment of the two promissory notes. Without ruling on the promissory note payments, the court granted an ex parte order temporarily restraining any of the parties from transferring any property in their possession or paying over any debt they owed to LIR, including but not limited to credit card receipts or payments owed to LIR or MBM. (Kravet Decl. at 13). The court also restrained LIR from removing any assets from the State of New York in which the defendant has an interest. On the basis of diversity jurisdiction,[4] LIR removed the action to this court on January 14, 1998, and now moves to transfer the proceedings to bankruptcy court.

## II. Analysis

### A. Scope of District Court and Bankruptcy Court Jurisdiction

District courts are vested with non-exclusive jurisdiction "of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). 28 U.S.C. § 157(a) further provides district courts with discretion to refer "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 ... to the bankruptcy judges for the district."

■ The jurisdiction of the bankruptcy court encompasses all cases under Title 11, all "core" proceedings arising under Title 11 as defined in Section 157(b)(2)(A)–(O), and includes the power to enter orders and judgments in such "core" proceedings. 28 U.S.C. § 157(b)(1). Bankruptcy judges may only hear a "non-core" matter if it is related to a case under Title 11, but must submit proposed findings of fact and conclusions of law for final order or judgement by the district court unless the parties consent to final judgment by the bankruptcy court. 28 U.S.C. § 157(c)(1). A proceeding is "related" to a bankruptcy case if it could have some "conceivable effect" on the administration of the bankrupt's estate. *Equimark Commercial Finance Co. v. First Nat. Bank of Cincinnati (In re Showcase Natural Casing Co.)*, 54 B.R. 138, 141 (Bankr.S.D.Ohio 1984). *See also Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ...").

■ Thus, whether a matter can be referred to a bankruptcy judge under Section 157(a) and whether the matter is within the

---

**2.** After adding interest, Hickox now seeks approximately $16,126,920.41. (Declaration of Russell M. Gioiella dated March 10, 1998, Exhibit A).

**3.** The Friedland Group's motion to confirm the arbitration award is currently pending in bankruptcy court in front of Judge Lifland.

**4.** LIR is an Anguillan corporation with its principal place of business in Anguilla, British West Indies, while Hickox is a resident of the State of Connecticut. Furthermore, the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Therefore, the court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1441 by reason of diversity of citizenship.

jurisdiction of the bankruptcy court involve the same inquiry: if a case concerns core proceedings or non-core proceedings that are related to Title 11 actions, that case is within the jurisdiction of the bankruptcy court and can be referred to the bankruptcy judge. *Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.,* 132 B.R. 4, 6 (S.D.N.Y. 1991) (Leisure, J.).

### B. "Core" vs. "Related" Proceedings

■ Defendant argues that plaintiff's claim is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O), since defendant's payment of plaintiff's promissory notes allegedly will impact on the debtor's ability to fulfill its obligations under the plan of reorganization. (Def.'s Reply Mem. of Law at 15). In so arguing, defendant relies on *LTV Corp. v. Back (In re Chateaugay Corp.),* 201 B.R. 48, 62 (Bankr.S.D.N.Y.1996) and *Hunnicutt Co., Inc. v. TJX Co., Inc. (In re Ames Dep't Stores, Inc.),* 190 B.R. 157, 161 (S.D.N.Y.1995) (Koeltl, J.) to bolster its claim that the instant case is inextricably intertwined with the implementation of the debtor's reorganization plan and qualifies as a "core" proceeding. Id. at 17.

Defendant's citations and logic are misplaced. Defendant's main argument, that HBLS *may* bear a larger financial burden if LIR is forced to pay the promissory notes, is premised upon a string of possibilities. That is, HBLS will be affected by LIR's promissory note payments *if* LIR is unable to pay its financial obligations to entities to whom both LIR and HBLS are jointly and severally liable and *if* the entities in question actually increase their financial demands on HBLS. In other words, plaintiff's claim has no direct or immediate impact on the administration of the debtor's estate, confirmation of plans, or other proceedings affecting the liquidation of the estate's assets. Furthermore, the cases cited by defendant involved claims that fell within the bankruptcy court's purview because they were "related" to a bankruptcy action, not because they were "core" proceedings.

Indeed, case law supports the opposite of defendant's contention, namely, that a legal dispute between non-debtors over promisso-

ry notes is not a "core" proceeding. *See Craig v. Air Brake Controls, Inc. (In re David A. Crabtree),* 55 B.R. 130, 131 (Bankr. E.D.Tenn.1985) ("It is the determination of this court that an action to enforce a promissory note is not a core proceeding"); *see also Cristol v. Western Book Distributors (In re Schear & Assoc. Inc.),* 47 B.R. 544, 545 (Bankr.S.D.Fla.1985) (action to collect account receivable is not a core proceeding). Therefore, considering settled precedent and the fact that this suit involves a dispute between two non-debtors which does not directly implicate the estate, the court finds that plaintiff's suit does not qualify as a "core", proceeding under 28 U.S.C. § 157(b).

■ In the alternative, defendant avers that this case is a "related" matter to HBLS' bankruptcy proceedings because it could have some "conceivable effect" on the administration of the debtor estate. Specifically, defendant argues that the "enforcement of the alleged promissory notes against LIR would have a disastrous effect upon the Debtor, HBLS, and would seriously affect other creditors of HBLS who are not parties in this case." (Def.'s Mem. of Law at 4).

In support of this proposition, defendant first argues that HBLS and LIR are jointly and severally liable for loans issued to LIR by Barclays Bank and, accordingly, any impairment of LIR's ability to repay the loans will result in HBLS owing more money. Id. at 25. Defendant further argues that the limited partners of HBLS are guarantors on a loan to LIR by U.S. Trust and, "[s]hould LIR not be able to meet its obligations to U.S. Trust, ... the limited partners of HBLS would be responsible for the payment." Id. As a result, defendant argues, Hickox' success in recovering from LIR would adversely affect not only LIR's ability to pay HBLS but also HBLS's limited partners.

While plaintiff does not contest HBLS's joint and several liability with LIR to Barclays Bank, he counters that "there is no possibility that HBLS's guaranty will be invoked" due to the facts that 1) the Barclays loan is 100% secured by physical assets of LIR which are worth more than the loan amount, 2) the Barclays' secured note takes

priority over plaintiff's unsecured loan, and 3) HBLS is out of business and, due to its debts, has a negative net worth. (Pl.'s Mem. of Law at 10, 11). Plaintiff also argues that the status of HBLS's limited partners as guarantors of U.S. Trust's loan to LIR will not affect HBLS since the U.S. Trust loan is fully secured by cash equivalents put up by plaintiff and another partner of HBLS. (Pl.'s Mem. of Law at 11).

The court finds plaintiff's arguments unpersuasive. Hickox' contentions that Barclays Bank and U.S. Trust will not assert their rights against HBLS are not dispositive of what will actually occur. In this case, U.S. Trust and Barclays Bank could very well seek repayment from HBLS. Indeed, each entity submitted a proof of claim form in the bankruptcy court and specifically reserved the right to collect on debts owed by HBLS. (Kravet Reply Affidavit dated March 17, 1998 ("Kravet Reply Aff."), Exhibits 3, 5). Therefore, it is "conceivable" that the debtor's estate will be affected by LIR's repayment of the promissory notes since HBLS, as joint and several obligor on the loan to LIR by Barclays Bank, and HBLS' limited partners, as guarantors on a loan to LIR by U.S. Trust Company, may be forced to cover payments that LIR is unable to make. LIR's and HBLS's joint and several liability to the Friedland Group raises identical issues. Furthermore, under HBLS' amended plan of reorganization, all creditors are to be repaid through the operations of the resort. (Debtor's Amended Plan of Reorganization, ¶ 5.05). LIR's payment of Hickox' promissory notes could impede LIR's operation of the resort, thereby impairing the resort's ability to repay the creditors.

■ Plaintiff cites several cases to argue that HBLS' sale of LIR's stock ruptured the connection between HBLS and LIR, depleted HBLS of any assets, and should prevent defendant from establishing the instant case as a "related" matter. *See In re Hall's Motor Transit Co.,* 889 F.2d 520, 523 (3rd Cir.1989) ("[w]hen the [property] left the es-

tate of the debtor and became property of Central Transit, its relation to the bankruptcy proceeding was at end"); *In re Chicago, Rock Island and Pacific Railroad Co.,* 794 F.2d 1182, 1186–87 (7th Cir.1986) ("That some land was once owned by a bankrupt does not supply federal jurisdiction of disputes concerning that land."). However, defendant does not argue that HBLS' former ownership of LIR confers jurisdiction in this instance. Instead, defendant maintains that the bankruptcy court has jurisdiction because the outcome of Hickox' lawsuit against LIR could "conceivably" affect the bankrupt estate of HBLS, thereby rendering the claim a related, non-core matter. *Equimark,* 54 B.R. at 141. Therefore, plaintiff's cites to cases that focus on prior ownership are unavailing.

■ Furthermore, contrary to plaintiff's assertions, HBLS' current lack of hard assets is not determinative of the relatedness issue of the instant suit. *See In re Xonics, Inc.,* 813 F.2d 127 (7th Cir.1987) ("[t]here could be a link between the disposition of claims to abandoned property and the treatment of other creditors"). Even if there were some merit to plaintiff's argument, the debtor may soon sue its lawyers for millions of dollars and potentially gain substantial assets. (See Kravet's Reply Aff., Exhibit 1).[5] The fact that HBLS' reorganization plan has been confirmed by the court also is irrelevant in the face of the potential impact plaintiff's claim has on the distribution of debtor's estate. *See Hunnicutt,* 190 B.R. at 161 ("the fact that the Plan is confirmed .… is irrelevant in light of [possible effect on the bankruptcy estate].").

Accordingly, prevailing legal standards and the facts of this case compel the court to find that plaintiff's suit against defendant over the promissory notes may "conceivably" affect the administration of the debtor's estate and, therefore, qualifies as a "related" matter

---

**5.** Even plaintiff's potential lawsuit can be considered an asset. 11 U.S.C. § 541(a)(1) defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." The

scope of section 541 is broad and includes causes of action. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 & n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

which may be referred to bankruptcy court.[6]

28 U.S.C. § 1334(b), the statute conferring district courts authority to refer related matters to bankruptcy court, was implemented in the Southern District of New York by a General Reference Order issued July 10, 1984, by then Acting Chief Judge Robert J. Ward of the United States District Court for the Southern District of New York. The Order states that:

> Pursuant to Section 157(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for this district.

■ Case law favors interpreting this order to mandate referral of "related" cases to bankruptcy court if the pending case falls within the terms of the General Reference Order and if the bankruptcy court has jurisdiction over the matter. *Pan Am.*, 132 B.R. at 6; *see also Alliance Communications Group, Inc. v. Northern Telecom, Inc.*, 65 B.R. 581, 585 (S.D.N.Y.1986) (Schwartzberg, J.) ("Referral to the bankruptcy court . . . is immediate and automatic."). Therefore, as a non-core proceeding that is related to a Chapter 11 case, plaintiff's lawsuit is referred to the bankruptcy court.

*C. Judicial Economy*

■ Even if referral to bankruptcy court were not required by Acting Judge Ward's order, judicial economy would also warrant the transfer of plaintiff's related case. While judicial economy is not sufficient in and of itself to justify transfer, it is a factor to be weighed in seeking to avoid the inefficiencies of piecemeal adjudication. *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir.1990) (citing *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988)) .[7]

Plaintiff cites two cases to support his arguments against referral for reasons of judicial economy, *UNR Indus., Inc. v. Continental Insurance Co.*, 623 F.Supp. 1319, 1333 (D.C.Ill.1985) and *Craig v. Air Brake Controls, Inc. (In re Crabtree)*, 55 B.R. 130 (Bankr.E.D.Tenn.1985). In UNR Indus., the court held that the district court cannot refer a "non-core" case to the bankruptcy court when a party would be entitled to a jury. In *Crabtree*, the district court found that the bankruptcy court did have jurisdiction over the claim in question but held that judicial economy mandated referral back to district court since plaintiff demanded and was entitled to a jury trial, and because jury trials in bankruptcy courts are only advisory. The court wished to avoid holding another jury trial if either party objected to the bankruptcy court's jury decision.

The instant case is distinguishable in several respects. First, plaintiff has not requested a jury trial, a fact which weighs in favor of transfer. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993). Second, there is no evidence that the case histories in *UNR Indus., Inc.* and *Craig* were as voluminous as in the instant case or that the bankruptcy courts were as substantially more familiar with the parties and their relationships as Judge Lifland is in the current matter. In any event, the Second Circuit has not adopted the legal reasoning found in *UNR Indus.* or *Craig* and this court is not bound by it.

Plaintiff's argument that referral should be denied since the district court may have to review the bankruptcy court's findings de novo is also without merit. While plaintiff "correctly points out that any determination by [the bankruptcy judge] on a non-core matter such as this is subject to de novo review by this court, . . . ," it is equally true that [the bankruptcy] judge has a better

---

6. Having found "related" jurisdiction on stated grounds, the court will not address defendant's argument that the reference by Hickox, counsel, Richard M. Asche, in an affidavit dated January 20, 1998, to the bankruptcy proceedings in plaintiff's Motion to Vacate the Temporary Restraining Order, proves the connection between the bankruptcy action and the instant claim. (Def.'s Mem. of Law at 28).

7. The other factors to be taken into account include whether the claim is core or non-core, prevention of forum shopping, economical use of the debtor's and creditor's resources, and the presence of a jury demand. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993).

**540**

vantage point from which to make proposed findings of fact and conclusions of law in the first instance." *Hunnicutt*, 190 B.R. at 162. Indeed, plaintiff's "line of reasoning would prevent any non-core matter from ever being referred to the bankruptcy court." *Id.*, at 163.

Accordingly, the court finds that the interests of judicial economy are best served in the instant action by referral to bankruptcy court. LIR and Hickox already have been involved in litigation in the bankruptcy court of this district that has stretched out over several years.[8] The bankruptcy court also has appointed a mediator to investigate the business records and transactions of Hickox, the Resort Entities, and the Friedland Group. Therefore, the bankruptcy court is familiar with the facts underlying this dispute and Judge Lifland is in a better position than this court to assess the issues involving the business contracts and interactions of the parties. At this stage in the litigation, the court's efforts to learn all that Judge Lifland already knows about the case would promote an inefficient use of judicial resources.

### III. Conclusion

Plaintiff's admonition that referral to bankruptcy court would be an "exercise in futility" rings hollow. In light of the "related" proceeding status of the plaintiff's claim and considering the interests of judicial economy, defendant's motion to refer plaintiff's claim to bankruptcy court is granted pursuant to 28 U.S.C. § 157(a). Plaintiff's motion to confirm the temporary restraining order is likewise referred to bankruptcy court.

**IT IS SO ORDERED.**

---

8. *In re HBLS, L.P.,* Chapter 11 Case No. 93 B     46399 (S.D.N.Y. December 19, 1997).