231 B.R. 149 (1999)
In re SOLOMAT PARTNERS, L.P. and Solomat Enterprises, Inc., Debtors.
Reorganized Solomat Enterprises, Inc. and Reorganized Solomat Partners, L.P., Debtors-Appellants,
v.
Jean-Pierre Ibar, William B. Bierce, Bierce & Kenerson, P.C., Michael R. Perle, Brian D. Graifman and Caro & Graifman, P.C., Respondents-Appellees.
Bankruptcy Nos. 98-50043 to 98-50045, BAP No. 98-50043.
United States Bankruptcy Appellate Panel of the Second Circuit.
March 3, 1999.
*150 *151 Solomat Partners, L.P. and Solomat Enterprises, Inc., New York City, by Cory E. Friedman, for appellants.
Jean-Pierre Ibar, New Cannan, CT, pro se, William B. Bierce, Bierce & Kenerson, P.C., New York City, by William B. Bierce, Michael R. Perle, Michael R. Perle, P.C., New York City, by Michael R. Perle, Brian D. Graifman, Caro & Graifman, P.C., C/o Gusrae, Kaplan & Bruno, New York City, by Brian D. Graifman, for appellees.
Before: MICHAEL J. KAPLAN, JEFFRY H. GALLET and ADLAI S. HARDIN, JR., Bankruptcy Judges.

OPINION
HARDIN, Bankruptcy Judge.
Appellants-Reorganized Debtors Solomat Partners, L.P. ("SPLP") and Solomat Enterprises, Inc. ("SEI") ("Reorganized Debtors" or "Appellants") appeal three orders of the Bankruptcy Court denying their Contempt Motion I, Contempt Motion II and Contempt Motion III (the "Contempt Motions") all filed against Jean-Pierre Ibar ("Ibar") and his attorneys (collectively "Appellees"). The Appellees seek sanctions for frivolous appeal against the Reorganized Debtors, their counsel and Marshall Field V ("Field"), the principal of the Reorganized Debtors. For the reasons set forth below, the Bankruptcy Court's orders denying the Contempt Motions are AFFIRMED and Appellees' sanctions motions are DENIED.

JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction of this appeal pursuant to 28 U.S.C. § 158(b) and (c). The denial of a request for civil contempt is appealable. See Barry v. United States, 865 F.2d 1317, 1324 (D.C.Cir.1989). A grant or a denial of civil contempt is reviewed for abuse of discretion. See United States v. Local 1804-1, Int'l. Longshoremen's Ass'n., AFL  CIO, 44 F.3d 1091, 1095 (2d Cir.1995); Jove Eng'g, Inc. v. Internal Revenue Serv., 92 F.3d 1539, 1545 (11th Cir.1996); Buttes Gas & Oil Co. v. Winkler (In re Sierra Trading Corp.), 482 F.2d 333 (10th Cir.1973).

BACKGROUND
Ibar, a French plastics scientist who was half owner and President of a French company, Solomat, S.A., formed Reorganized Debtors *152 SPLP and SEI to engage in the rheomolding business in 1987. Ibar and Field entered into an employment agreement and an investment agreement in May 1987 under which Solomat S.A. would supply the technology and Field would supply the money. Ibar received two-thirds and Field received one-third of the equity in the joint ventures. Field had the right to nominate three board members. Ibar and his wife also served as directors. Field promised to make certain capital contribution and to lend the projects over $5 million.
The Debtors were forced into involuntary bankruptcy by creditors Arthur Anderson & Co., Northern Trust Co., Richard F. Fagan & Sons, Inc., Glenbrook Industrial Park and Field on August 26, 1994. Ibar filed two proofs of interest and fourteen proofs of claim against the Debtors' jointly administered estates.
On March 1, 1995, a hearing was held on Ibar's motion to withdraw his claims after Field had filed objections thereto. The Bankruptcy Court signed an order (the "March 3, 1995 Order") granting Ibar's motion with prejudice to the future assertion of claims against the Debtors and "to any future assertion by Ibar of derivative claims against the following individuals [including Field]" (emphasis added), but without prejudice to claims against any party other than the Debtors.
By order dated March 8, 1995 (the "Confirmation Order"), the Bankruptcy Court confirmed the Debtors' Second Amended Plan of Reorganization. The Amended Plan provided that all allowed claims were paid in full, all prepetition interests were canceled and Field acquired 100% of the equity interests in the Reorganized Debtors.

THE CONTEMPT MOTIONS
Contempt Motion I
It appears that post-confirmation controversy began with a May 16, 1995 letter from appellee William Bierce on behalf of Ibar and/or his French company, Solomat, S.A. to a representative of Reorganized Debtors and Field. Therein and thereafter claims and settlement demands were made orally and in correspondence over a period of many months. Although no action or proceeding of any kind had been commenced by Ibar/Solomat, S.A., on May 29, 1997 Reorganized Debtors filed Contempt Motion I with the Bankruptcy Court apparently to hold Appellees or some of them in contempt solely on account of their written and oral assertions and demands. A hearing was held on June 25, 1997, but Contempt Motion I was not decided until the August 3, 1998 Order denying Contempt Motion I which is here on appeal.[1]
Contempt Motion II and Contempt Motion III
On May 30, 1997, Ibar commenced an action solely against Field in the Supreme Court of the State of New York, New York County, J.P. Ibar v. Marshall Field ("New York Action") for breach of fiduciary duty and other wrongdoing. On June 25, 1997 the Reorganized Debtors, although not defendants in the New York Action, filed Contempt Motion II in the Bankruptcy Court alleging that Ibar violated the March 3, 1995 Order and the Confirmation Order by commencing the New York Action. On July 17, 1997. Ibar removed the New York Action to the United States District Court, Southern District of New York (Chin, J.).
On October 28, 1997 the Bankruptcy Court held a hearing on Contempt Motion II and ruled as follows (the "October 28 Oral Order"):
It is clear to the Court, having read the complaints filed in the New York proceeding that has been referenced here in its present form, without, obviously reference to any amendment or particularization which may be filed in the future, it is clear that complaint violates both the March 3rd 1995, order of this Court and the March 5th, 1995 [sic; should be March 8, 1997], order of confirmation, those orders being violated, in effect, individually and/or collectively.

*153 Mr. Ibar will be sanctioned for that filing in the amount of ten thousand dollars payable within ten days, that is, on or before November 14th. He will be further sanctioned following the expiration of five days from this order, that is, on November 5th, by additional sanctions in the amount of twenty-five hundred dollars each day thereafter that he continues to pursue that claim.
Transcript at pp. 159-60. At the same hearing, the Bankruptcy Court denied Contempt Motion II with regard to all Appellees other than Ibar. The Bankruptcy Court also stated that Ibar had the right to amend the complaint and continue the prosecution of the New York Action so long as he did not thereby violate the Bankruptcy Court orders. But on the very next day, October 29, 1997, the Bankruptcy Court held a telephonic hearing in which the Court sua sponte modified the October 28 Oral Order to vacate the monetary penalties imposed upon Ibar.[2]
Ibar filed an amended complaint in the New York Action dated November 5, 1997, which also named only Field as defendant. The amended complaint alleged that Field had breached his fiduciary duty to Ibar and asserted claims for intentional infliction of emotional distress, abuse of process, malicious prosecution and prima facie tort. On November 18, 1997, the Reorganized Debtors filed Contempt Motion III in the Bankruptcy Court seeking to hold Ibar and the other Appellees in contempt for filing the amended complaint.
Relevant Proceedings in 1998
On November 21, 1997, Ibar moved to vacate the October 28 Oral Order. After further motions and hearings, on March 2, 1998 the Bankruptcy Court entered an order vacating the October 28 Oral Order and the October 29 modification thereof (the "March 2 Vacatur Order") "without prejudice to reenter in whole or in part, or in modified form, and with nunc pro tunc effect, if appropriate, following further consideration of" all the Contempt Motions.
The March 2 Vacatur Order was appealed by the Reorganized Debtors. That appeal has been fully briefed and argued and is pending sub judice before the District Court for the District of Connecticut.
On June 17, 1998, Reorganized Debtors moved in the Connecticut District Court to withdraw the reference from the Bankruptcy Court. That motion has never been decided and remains sub judice.
On August 3, 1998, the Bankruptcy Court entered three orders, denying Contempt Motion I, Contempt Motion II and Contempt Motion III. The August 3 Orders are the subject of this appeal.
On October 1, 1998, U.S. District Judge Chin issued a Memorandum Decision on Field's motion to dismiss the Amended Complaint in the New York Action. Judge Chin dismissed Counts II, III, IV, and V for failure to state a claim. He also dismissed portions of Count I on the grounds (i) that Ibar had no cause of action for injury to the corporate entities that affected him only derivatively as a stockholder and (ii) that claims that could have been litigated as objections to the Amended Plan or by appeal from the Confirmation Order were barred by the Confirmation Order. Judge Chin made it clear that Ibar may still pursue Count I for the personal damages that he suffered.

DISCUSSION
Basic Defects in all three Contempt Motions
The Bankruptcy Court's August 3 orders denying all three Contempt Motions were correct and must be affirmed for the reasons discussed below under Appellants' Contentions on Appeal. But all three motions suffer *154 from basic defects which apparently were never presented to the Bankruptcy Court.
Contempt Motion I
The fundamental defect in Contempt Motion I was that neither Ibar nor his French company Solomat S.A. nor any of the other Appellees ever did anything constituting a violation of the March 3, 1995 Order, the Confirmation Order or Sections 524 or 1141 of the Bankruptcy Code. Ibar might have acted contemptuously of the March 3, 1995 Order or the Confirmation Order if he had commenced any form of legal proceedings either in or out of the Bankruptcy Court to assert claims against the Reorganized Debtors, or perhaps if he had attempted to assert on behalf of the Reorganized Debtors derivative claims against Field or others (which, of course, he would have had no incentive to do after confirmation, since his equity interests in the Reorganized Debtors had been wiped out under the Amended Plan). But Ibar never commenced any legal proceeding in any court to assert any such claims either before or after Reorganized Debtors filed Contempt Motion I on May 29, 1997.
Contempt Motion I alleges only that oral or written statements were made by Ibar or his counsel during many months of contentious negotiations post-confirmation in which the Appellees allegedly made threats to file claims which would have violated the Bankruptcy Court Orders. The question that leaps to mind in the face of such an allegation is, "so what?" Neither the Bankruptcy Court's Orders nor the Bankruptcy Code purports to forbid parties from asserting arguments or making threats in the course of heated negotiations, no matter how groundless or even stupid such ill-conceived arguments or threats may be. Appellees simply could not be held in contempt for mere yammering at Field and/or the Reorganized Debtors without filing any legal proceeding.
Contempt Motion I was improvident and could have been denied forthwith by the Bankruptcy Court. The August 3, 1998 Order denying that Motion was correct.
Contempt Motions II and III
The defects with respect to Contempt Motion II and Contempt Motion III are different from, but just as patent as, that infecting Contempt Motion I.
Contempt Motion II is based upon the filing of the New York Action, and Contempt Motion III is based upon the amended complaint filed in the New York Action. The problem with both Motions is that the Reorganized Debtors are not parties to the New York Action, and they have no possible interest in its outcome. No post-petition claims have ever been asserted by Ibar or any of the Appellees in any court on behalf of or against the Reorganized Debtors. The New York Action is not a case under the Bankruptcy Code, and it is directed solely at Field, not the Reorganized Debtors.
The Reorganized Debtors lacked standing to bring Contempt Motions II and III, and the Bankruptcy Court had no jurisdiction with respect to the subject matter of those Motions. Compare Murdock v. Allina (In re Curtina Int'l.), 15 B.R. 993, 995-96 (Bankr.S.D.N.Y.1981) (the Bankruptcy Court did not have jurisdiction to adjudicate creditor's personal claim of alter ego against nondebtor defendants, debtor's officers and shareholders, when the creditor sought a personal recovery and the trustee had expressed no interest in the private controversy). The fact that Field is the sole equity owner and controlling person of Reorganized Debtors is irrelevant, for a corporate entity is legally separate from its owners. See generally, First Nat'l. City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 629, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983); Taylor v. Standard Gas Co., 306 U.S. 307, 322, 59 S.Ct. 543, 83 L.Ed. 669 (1939).
Even if the commencement or prosecution of the New York Action could somehow be said to have violated an order of the Bankruptcy Court (see discussion below), the Bankruptcy Court did not have jurisdiction to grant the Motions. Under 28 U.S.C. §§ 1334(b) and 157(a), bankruptcy courts have jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The New York Action *155 is not a case "arising under" or "arising in" a case under Title 11. Nor did the Bankruptcy Court possess "related to" jurisdiction under Section 1334(b) with respect to the New York Action. As stated by the Second Circuit in Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir.1992): "The test for whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any `conceivable effect' on the bankruptcy estate." See also Hickox v. Leeward Isles Resorts, Ltd., 224 B.R. 533, 536 (S.D.N.Y.1998) (proceeding is "related to" a bankruptcy case if it could have some "conceivable effect" on administration of the debtor's estate); Carver v. Brecher (In re Carver), 144 B.R. 643, 647 (S.D.N.Y.1992) (action between non-debtors "regarded as related to a bankruptcy case if its outcome would affect the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the resolution of the action would alter the debtor's rights or liabilities"); Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.), 219 B.R. 363, 367 (Bankr.S.D.N.Y.1998) (a litigation falls within the "related to" jurisdiction of the bankruptcy court if its outcome might have any "conceivable effect" on the bankruptcy estate).
The New York Action fails the "conceivable effect" test. No imaginable outcome of the controversy between Ibar and Field in the New York Action can or will have any effect whatever on the Reorganized Debtors. Even if the District Court permitted Ibar to assert in his own behalf claims against Field which, correctly analyzed, should be deemed derivative in nature, this would have no practical or legal consequence for Reorganized Debtors, whose rights and liabilities would be unaffected.
To summarize, Reorganized Debtors are in no way aggrieved or affected by the New York Action, and the commencement and prosecution of that Action did not and could not violate any order of the Bankruptcy Court with respect to the Reorganized Debtors. As such, the Reorganized Debtors had no standing to file Contempt Motions II and III. And because the New York Action had no conceivable effect on the Reorganized Debtors or their Chapter 11 estates, the Bankruptcy Court had no subject matter jurisdiction to grant Contempt Motions II and III. Only U.S. District Judge Chin had jurisdiction to determine the legal sufficiency of Ibar's claims asserted against Field in the New York Action, including the question whether those claims were personal to Ibar or were inherently derivative in nature and therefore incapable of assertion by Ibar in his own right.[3]
Reorganized Debtors' Contentions on Appeal
Appellants argue first (Brief point II, 33-40) that "the August 3 orders are error" (Heading p. 33) because both the complaint and the amended complaint in the New York Action asserted claims which were derivative, in purported contempt of the Confirmation Order and the March 3, 1995 Order. In support, Reorganized Debtors point to District Judge Chin's Memorandum Decision which dismissed portions of Ibar's Count I against Field in part on the ground that the harm alleged in such portions constituted in reality harm to the corporate entities, rather than to Ibar personally, and were therefore incapable of assertion by Ibar in his own right.[4]
*156 The argument is flawed in several respects and was rightly rejected by the Bankruptcy Court in the August 3 Orders. Reorganized Debtors have not and cannot point to any language in either the Confirmation Order or the March 3, 1995 Order which Ibar or the other Appellees violated by commencing the New York Action. The March 3, 1995 Order did prohibit Ibar from commencing "derivative claims." But a derivative claim is a claim filed by a shareholder on behalf of his corporation. As the Bankruptcy Court correctly stated on August 3, Ibar did not assert any derivative claim on behalf of the Reorganized Debtors. To the contrary, he expressly disclaimed any intent to sue derivatively. The fact that portions of Ibar's personal claims against Field were pleaded defectively and were dismissed by Judge Chin because they sought personal redress for harms to the corporate entities (i.e., claims that were, colloquially, derivative in nature) does not mean that Ibar violated a court order prohibiting the filing of derivative claims. And even if the commencement of the New York Action could be said to have contravened some identifiable and unambiguous language of either the March 3, 1995 Order or the Confirmation Order, it had no effect whatever on the Reorganized Debtors. No claim was ever asserted against the Reorganized Debtors in the New York Action and no right or interest of Reorganized Debtors could ever be affected by any of the proceedings in that Action.
Sections 524 and 1141 of the Bankruptcy Code, relied on by Reorganized Debtors, provide no more of a basis for Contempt Motions II and III than the March 3, 1995 Order and the Confirmation Order. Although they quote both sections of the Code in their Brief (pp. 41-43), Reorganized Debtors do not identify any language in either Section which even arguably was violated by the New York Action. Instead, they assert that Sections 1141 and 524 "not only enjoin attempts to enforce pre-confirmation claims [none of which was asserted in the New York Action], but they also enjoin attempts to assert claims that belonged to the Debtors in the first place," and they then assert that "[a]ll of Respondents' [sic; should read "Ibar's"] alleged claims against, Mr. Field, clearly belonged to the Debtors, not Respondents" (Brief 43). The plain fact is, however, that Ibar did not attempt or purport to assert derivative claims belonging to Reorganized Debtors in the New York Action. He attempted and purported to assert solely personal claims against Field. The fact that Judge Chin concluded that portions of those claims reflected harm to the corporate entities which could not be asserted as personal claims by Ibar does not and cannot reconstitute those portions as derivative claims, because they were not pleaded as or intended to be derivative claims. Ibar's defective pleading of personal claims in the New York Action did not constitute a contempt of any Order of the Bankruptcy Court or any provision of the Bankruptcy Code.
Little need be said of Reorganized Debtors' argument (Brief point II, 40-41) that the Bankruptcy Court's October 28, 1997 oral order is "law of the case." A court always has the power to reexamine, modify, vacate, correct and reverse its prior rulings and orders. See, e.g., Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567, 583 (3d.Cir.1997) ("it is clear that all federal courts retain power to reconsider if they wish") (citing CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 18 FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4478) (2d ed.1981); United States v. Adegbite, 877 F.2d 174, 178 (2d Cir.), cert. denied, 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989) (although a court generally adheres to its own earlier decision on a given issue in the same litigation, the issue is not closed with all of the finality of res judicata and the court may exercise its discretion to review the earlier ruling in appropriate circumstances); Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 952-53 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964) ("the `law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense") (quoting Judge Learned Hand in Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2d.Cir.1924)).
Finally, and most unseemly, is Reorganized Debtors' plaint that "The New York Action has drained resources from the Reorganized *157 Debtors [and][i]f litigation over the Amended Complaint continues, the Reorganized Debtors may be forced to intervene in the New York Action to vindicate their interests" (Brief 41). For reasons already stated, Reorganized Debtors have no interests to vindicate in the New York Action. The resources that have been inappropriately drained in these proceedings are those of the Appellees in having been forced to respond to Contempt Motion I, Contempt Motion II, Contempt Motion III and this appeal.
Appellees' Motions for Sanctions for Frivolous Appeal
It is apparent from the foregoing that all three Contempt Motions were defective and could have been denied at an early stage by the Bankruptcy Court. Importantly, however, it appears that the basic defects in all three Contempt Motions were never drawn to the Bankruptcy Court's attention. Rather, Appellees evidently focused their and the Bankruptcy Court's attention on the specifics of the parties' conduct in the negotiations leading to Contempt Motion I, and on similar detail concerning the derivative nature vel non of Ibar's complaint and amended complaint in the New York Action and the respective culpability or responsibility of the various Lawyer-Appellees in connection with Contempt Motions II and III. Even on this appeal, none of the Appellees ever focused any argument on the basic defects described above. As a consequence, the basic issues which might have resulted in prompt denial of the Contempt Motions were never illuminated for the Bankruptcy Court.
Instead, the Bankruptcy Court, inundated with massive submissions from the parties and initially influenced by the fact that the complaint in the New York Action appeared to allege claims which were inherently derivative in nature (although not derivative in fact), rendered the October 28 Oral Order finding Ibar in contempt and imposing monetary sanctions. Although the sanctions were correctly removed by the Bankruptcy Court sua sponte on October 29 and the October 28 Oral Order was subsequently vacated, it was not until August 3, 1998 that the Bankruptcy Court finally entered the Orders appealed from denying all three Contempt Motions. Thus, aside from the standing and jurisdiction defects, which were never addressed in the Bankruptcy Court, it cannot be said that Contempt Motions II and III were so utterly lacking in merit as to render this appeal sanctionable as frivolous.
In addition, it should be noted that District Judge Chin in his October 2, 1998 Memorandum Decision dismissed Ibar's claims for intentional infliction of emotional distress, abuse of process, malicious prosecution and prima facie tort, all of which (like the instant sanctions motions) sought damages based predominantly if not exclusively on the alleged frivolousness or bad faith of the Contempt Motions. While the legal standards for those claims are not necessarily the same as those for sanctions under Bankruptcy Rule 8020, Judge Chin's analysis is persuasive authority for denial of sanctions on this appeal.
Under these circumstances  to wit, the failure of the Appellees to illuminate for the Bankruptcy Court or even on appeal the fundamental defects in the Contempt Motions, the fact that Contempt Motion II was initially granted by the Bankruptcy Court, and the dismissal of analogous claims in the New York Action  it is our conclusion that an award of sanctions for frivolous appeal is not warranted.

Conclusion
The Bankruptcy Court Orders dated August 3, 1998 denying Contempt Motions I, II and III are affirmed. Appellees' motions for sanctions for frivolous appeal are denied.
NOTES
[1] There is some ambiguity as to whether the October 28 Oral Order, referred to below, was intended to grant Contempt Motion I.
[2] Although the tape for the October 29, 1997 tape was accidentally lost or erased, the docket sheet reflects, "Hearing Held via telephone conference with Atty Perle, Atty Friedman and Atty Berman Re: Court's Oral Ruling of 10/28/97. The written order will not track the oral order of 10/28/97. The sanction of $10,000.00 and an additional $2,500.00 fine per day is not permissible and is VACATED. In the event an amended complaint is filed, or the complaint is withdrawn or somehow altered, Judge Dabrowski would like a copy of it. If this case is placed on the suspension calendar in NY, the 10/28/97 order will be tolled until further consideration of this court. (slp) (EOD 01/13/98) [95-30995]."
[3] Strangely enough, Reorganized Debtors acknowledge the exclusivity of District Court jurisdiction in respect of the New York Action, apparently without appreciating the significance of the acknowledgment. Thus, in their Opposition to the Graifman motion for sanctions, Reorganized Debtors assert "District Judge Denny Chin's Memorandum Decision . . . determines the issues between Movants and Respondents on this Motion" (p. 2) and "to contend . . . that the Bankruptcy Court would presume to manage District Court Chin's docket is absurd" (p. 15).
[4] Specifically, Judge Chin held:

Ibar may not, however, pursue any derivative claims. Ibar may not pursue any claims for injury to SEI or SPLP, as those claims should have been presented in the bankruptcy proceedings. Ibar may only pursue his individual claims for damages.
Ibar v. Field, No. 97 Civ. 5211, 1998 WL 689953, at *5 (S.D.N.Y. Oct. 2, 1998) (emphasis supplied).